## MARGARET BORLAND v. JAMES NICHOLS.

1. The widow's acceptance of a devise to her does not, under section 10 of the intestate law of 1797, bar her of her dower in land, which her husband conveyed in his lifetime, and in the conveyance of which she did not join.
2. And the fact that the husband conveyed with general warranty will not restrain the operation of the statute.

ERROR to the District Court of Allegheny.

*Sept.* 19. This was an action of dower, by Margaret Borland, the widow of John Borland, against James Nichols, to which the defendant pleaded *ne unques accouple*, &c., and that the husband of the demandant made a devise and bequest, in his last will and testament, of a certain portion of his estate to her, in lieu of her dower in his estate, which devise, &c., she afterwards, and before the commencement of this suit, accepted.

In 1798, the demandant being then married to John Borland, who was seised in fee of the premises, Borland aliened the same to one Craig, the demandant not joining in the conveyance. Nichols

derives title under Craig. In 1830, Borland died, having made a will, whereby he willed and bequeathed to the demandant, his widow, who accepted the same, "one-third of the profits of the land that he might own at his decease, with a sufficiency of timber, and one-third of all the buildings on that part of the plantation whereon he resided," together with certain personal property, "during her natural life." In 1848, this suit was brought by the widow to recover her dower in the land aliened in 1798 to Craig.

A special verdict, finding the above facts, was taken, and upon the question of law reserved in the case, HEPBURN, President, delivered the following opinion:

"The jury have found by their verdict that the plaintiff accepted and received the property devised and bequeathed to her under the will of her husband; and the question of law reserved in the case is, Does the acceptance, by the widow, of the devise to her, under the will of her husband, bar her of her dower in that property, which he sold and conveyed in his lifetime, and in the conveyance of which she did not join?

"By the 11th sec. Act of 8th April, 1833, Dunl. 500, it is enacted 'That a devise or bequest by a husband to his wife of any portion of his estate or property, shall be deemed and taken to be in lieu and bar of her dower in the estate of such testator, in like manner as if it were so expressed in the will, unless such testator shall in his will declare otherwise: provided, that nothing herein contained shall deprive the widow of her choice either of dower or of the estate or property so devised or bequeathed.'

"In Cauffman *v.* Cauffman, 17 S. & R. 16, it is decided that a widow to whom a legacy or devise is given by the will of her husband, which, if accepted by her, would be a bar either under the will or under the Act of Assembly, to all future claim of dower at law, may make her election *in pais*, and shall be afterwards bound by it, where it is done freely and with full knowledge, &c., as demanding and receiving payment of a legacy, taking possession of a devise, or prosecuting and recovering by suit a legacy, devise, &c. See also 1 Rawle, 171; 3 Rawle, 296; 2 Penn. 322.

"The Act above recited was passed in 1832, but it is substantially the same as the 10th sec. of the Act of 1794, under which the above decisions were made.

"The law is clear of all difficulty, then, that the bequest and devise to the plaintiff must be deemed and taken to be in lieu and bar of her dower out of the estate of her deceased husband, if she

has elected to take the provision made for her by the will of her said deceased husband. The jury have passed upon this fact, and, upon evidence entirely satisfactory, have found that she did accept the bequest and devise under the will.

"But it is contended, on the authority of Leinaweaver v. Stoever, 1 W. & S. 160, that the property in question having been aliened by the husband of the plaintiff before his will was made, that the dower was reserved in the husband's conveyance, and that, therefore, the widow may recover, notwithstanding her election to take under the will. In the case referred to, the husband died intestate, and it was held that the acceptance by the widow of her distributive share under the intestate laws, would not bar her from receiving dower out of land aliened by him in his lifetime. This is a very different case from the one now before us. The distributive share of the widow under the intestate laws, is to remain charged on the premises, and to be in lieu and satisfaction of dower. Charged on what premises? certainly those out of which the share issued, so I presume the dower is to be satisfied only as to those premises on which the charge remains and out of which her distributive share arose. Certainly real estate of the husband situated elsewhere, in another State for instance, would not be discharged of the widow's dower, by assigning to her the one-third of the appraised value of a tract of land in this State, and yet it would be just as clear that under a devise to the widow by her husband, and accepted by her, that her dower in all his lands wherever situated would be effectually barred. But it may be said the widow's dower was left in the land, the husband sold his own interest, and the purchase-money was an equivalent for nothing else. The husband himself best knew the nature of his contract with his alienee, and if it was his desire that the widow should recover her dower in this property, it would have been easy for him to have said so in his will.

"He is presumed to have known that the devise would bar his widow of her dower in his entire estate; and knowing this, if he had intended anything more for her than is specifically given in the will, he would surely have so expressed it. I am of opinion, therefore, that the devise and bequest to the widow is in full satisfaction of her dower, and that she cannot recover in this suit.

"Judgment for defendant on the verdict."

In this Court the following error was assigned: The Court erred in entering judgment for the defendant on the special verdict.

*Shaler*, for the plaintiff in error.—The widow's acceptance of the devise to her did not bar her of her dower in the property, which he sold and conveyed in his lifetime, and in the conveyance of which she did not join: 1 W. & S. 160.

*Williams* and *Kuhn*, contrà.—Was the property, aliened by Borland in his lifetime, a part of his estate within the meaning of the Act 8th April, 1833? If not, demandant has no title. Her claim is founded on her husband's seisin, and she is only entitled as his doweress.

Dower, in the Act of 1833, means dower at common law, and can only arise here in cases like the present, which do not fall within the intestate laws. That Act creates a new interest in the wife, which is to take the place and be received "in lieu and full satisfaction of her dower at common law." It is only to a case of alienation before death, or devise to a stranger, that the phrase in the statute of wills can now be properly applied.

The Act was for the relief of the heir, and was only an extension of the equitable doctrine of election. The election is entirely for the decision of the widow. A recovery here would defeat the purpose of the Act. The warranty in the deed to Craig is a general one,—"to have and to hold, &c., for ever, warranted and defended by the said Borland, his heirs, &c., for ever, free from the legal claim of all persons whatever." A recovery here would be followed by an action against the heirs on the warranty, a recovery in which would enable the widow to charge the additional dower on the very estate of which the husband died seised.

The case in 1 W. & S. 160, arose under the intestate laws, which profess only to legislate on property of which the intestate died seised, and that which descends to his heirs. The provision in sec. 15 is only to be taken with reference to that part of his estate.

It cannot be affirmed here that Borland only intended to sell his own interest. He did not so profess, and has warranted the title of the whole generally, so as to render his estate liable, on a recovery in this suit.

The opinion of this Court was delivered by

BELL, J.—This controversy is identical, in principle, with Leinaweaver *v.* Stoever, 1 W. & S. 160, the reasoning of which is unanswerable. It is true, the questions presented by the two cases arise under different statutes, but both of these have the same object in view, and are, therefore, subject to the same construction. If,

indeed, there be any difference discoverable in the language of the two enactments, in the particular now under consideration, it is in favour of the claim set up in this action. This is made subject to the Act of 1797, the 10th section of which provides that an accepted devise of any portion of a testator's estate to his widow, "shall be deemed and taken in lieu and bar of her dower *out of the estate of her deceased husband*, in like manner as if the same was so expressed," while the Act of 1794, under which Leinaweaver *v.* Stoever was adjudicated, directs that "the share of the estate of an intestate, in this Act directed to be allotted to the widow, *shall be in lieu and satisfaction of her dower at common law.*" Yet notwithstanding the comprehensiveness of these words, which, taken literally, would seem to include all a widow can claim at common law, it was solemnly adjudged that accepting the statutory interest in the lands left by her deceased husband, will not bar her of dower in lands aliened by him in his lifetime, without her co-operation. And why? Simply because, by the unwritten law, a husband has no power to destroy his wife's estate in dower, by alienation, and he is not helped to do it by the Act of 1794, which, like its successor of 1833, has reference solely to the realty of which the baron was owner at the time of his death: Riddlesberger *v.* Mentzer, 7 W. 141. If this be the true meaning of the older statute, and I do not understand it is denied, by what warrant we can ascribe a broader signification to the Act of 1797, which merely substitutes the accepted devise for the widow's interest in "the estate of her deceased husband;" a description having no application to property in which he divested himself of all estate prior to his death. The truth is, no one can read these statutes and those that have followed them of like import, without at once perceiving this operation was intended to be confined to lands an intestate had left to descend on his heirs, or a testator had given to his devisees. The simple absence of every direct expression, indicative of a design to bring lands aliened within the purview of the enactments, ought, in itself, to be accepted as sufficiently proving no such design was entertained; for surely, had the law-maker intended so important a change in the existing law, he would not have left it to a doubtful inference drawn from inconclusive reasoning. This suggestion is in accordance with one of the primary canons of construction, which teaches that statutes are to be interpreted in subordination to the common law, a change of which is not to be imputed to the legislative body, where the legislative act can be construed in har-

mony with it. "It is not to be presumed," says an approved writer on this subject, "that the legislature intended to make any innovation upon the common law, further than the case absolutely required. The law rather infers that the act did *not* intend to make any alteration, *other* than what is specified, and besides what has been plainly pronounced; for if the Parliament had had that design, it is naturally said, they would have expressed it:" Dwarris on Statutes, 43. This position is abundantly supported by the highest authority, as a glance at the books will show: Plow. 365; 1 P. W. 252; 2 Inst. 148; Id. 301; 1 Saunders, 240; 1 Kent's Com. 434. But, as has already been intimated, direct decision has closed on this question, so far as the Act of 1794 is involved, and reason and analogy equally conclude it, as it is presented under the Act of 1797. The most that can be said for the defendant in error is that the object of the latter statute was to put a widow to her election, where there was a general devise in her favour, precisely as she may be called on when a testator expressly provides that the thing devised is to be taken in lieu of the devisee's dower in his estate. Yet it will scarcely be pretended that such a direction would defeat the widow's estate in lands aliened before the execution of the will. Our books furnish us with no case countenancing such a doctrine—at least none have been brought to our notice by counsel noted for industrious research, for the reason, as I take it, that this idea has never been entertained, either at law or in equity. It is said, however, that a leading object of the Act of 1797, and now of the Act of 1833, is to protect the heir or devisee from the unreasonable exactions of widows, claiming to take both under the will and at law. And so indeed it is. It was predicated upon the reasonable presumption that a testamentary gift to a man's wife is, unless otherwise expressed, always intended by the testator to be instead of dower in the lands descended from, or devised by, him. A positive rule was, therefore, introduced in aid of this presumed intention, for the benefit of the *hæres natus* and *hæres factus*. But was it, also, intended to operate for the benefit of a stranger alienee? I have already endeavoured to show it was not, and, indeed, this appears to me to be so plain as to leave no room for cavil in ordinary cases. But, as leading to a different conclusion in this litigation, we are directed to the covenant of warranty entered into by the husband of this demandant. It is argued that as his devisees may be made to answer in damages for a breach of it, the only way in which their estates can be pro-

tected is by denying the demandant's right to recover. We must, however, recollect that we are not, now, weighing the consequences that may flow from a breach of the testator's covenant. We are called on simply to declare the meaning of a statute, which must be the same whether there be warranty of the lands aliened or not. If it be conceded that the husband's unassisted alienation is impotent, under the terms of the statute, as they stand, to destroy the wife's dower, it must necessarily result that a new quality cannot be conferred on the Act, by a covenant not at all within its contemplation. If without a covenant of warranty the case would be without the purview of the enactment, how can the presence of such a covenant enlarge the circle of its operation? It may be well enough to say, it ought to work such an effect, but the answer is, the statute does not so provide. The error consists in the endeavour to wrest it from its legitimate application to a class of cases which may be called general, to make it subserve the exigencies of a particular instance, probably not thought of at the time. In this aspect of it, the argument is reduced to this proposition. Lands aliened *inter vivos* are or are not within the contemplation of the Acts. If they are, it requires not the aid of a special undertaking by the husband, to make them operative; if they are not, such an undertaking cannot extend the circle of their efficacy. This must have been the view taken in Leinaweaver *v.* Stoever, where the husband executed a bond to indemnify against the wife's claim of dower, a recovery on which would, of course, have decreased his remaining estate. Yet it was deemed so unimportant in the decision of that question, that it was neither urged on the argument, nor noticed in the opinion of the Court.

For the reasons given, the judgment rendered by the District Court must be reversed, and as the special verdict finds everything necessary, the proper judgment in favour of the demandant will be awarded by this Court.

Judgment reversed, and judgment for the demandant.