# Haupt, Appellant, v. Unger.

*Agreement for sale of real estate—Sufficiency of description.*

In an agreement for the sale of real estate the same is sufficiently described as follows: "All of the properties of E. J. Unger, deceased, in Croyle township, together with the Heise and Bertenet additions, including buildings and schoolhouse, and all of the other buildings located on the lands, with the appurtenances thereto, including the coal and minerals of every description."

*Trusts and trustees—Husband and wife—Title in husband's name—Vendor and vendee—Evidence.*

On a bill in equity by a vendee against a vendor to compel the conveyance of real estate, where the vendee claims that the vendor purchased the property as his agent, but the vendor's wife claims that the property was purchased for her with her money and title taken in her husband's name, the testimony to sustain her claim must be clear, precise, convincing and satisfactory, that the husband took the title for her instead of for himself or his vendee, and that she received from other sources than her husband the moneys with which she paid for the properties.

Argued Oct. 6, 1908. Appeal, No. 92, Oct. T., 1908, by plaintiffs, from decree of C. P. Cambria Co., March T., 1905, No. 3, dismissing bill in equity in case of Herman Haupt and George B. Stineman v. David E. Unger and Catherine ·M. Unger. Before Mitchell, C. J., Fell, Brown, Mestrezat, Potter, Elkin and Stewart, JJ. Reversed.

Bill in equity for specific performance. Before O'Connor, P. J.

The facts are stated in the opinion of the Supreme Court.

*Error assigned* was decree dismissing the bill.

*Thomas H. Murray*, with him *James P. O'Laughlin* and *Hazard A. Murray*, for appellants.—Where a husband takes deed for property, the presumption is that it is his and the burden of proof is on the wife to show the contrary: Dunbach v. Bishop, 183 Pa. 602.

The testimony for this purpose must be clear, precise, convincing and satisfactory: Olinger v. Shultz, 183 Pa. 469; Hoover v. Hoover, 129 Pa. 201; Lau's Estate, 176 Pa. 100; Spencer v. Colt, 89 Pa. 314; Cullmans v. Lindsay, 114 Pa. 166.

The description was sufficient: Ross v. Baker, 72 Pa. 186; Ranney v. Byers, 219 Pa. 332; McKee's Est., 48 P. L. J. 309; Lulay v. Barnes, 37 W. N. C. 409; Trout v. Trout, 87 Pa. 149; Heppenstall v. O'Donnell, 165 Pa. 434.

*J. Norman Martin*, with him *F. P. Martin*, for appellees.—The evidence is sufficient to sustain the decree dismissing the

bill: Olinger v. Shultz, 183 Pa. 469; Dumbach v. Bishop, 183 Pa. 602; Green v. Brooks, 215 Pa. 492; Callendar v. Kelly, 190 Pa. 455; Burrell Twp. v. Uncapher, 117 Pa. 353; Trickett on Witnesses, p. 57, sec. 63.

Specific performance is a matter of grace and not of right. The contract is inequitable and the court will withhold its assistance and leave the parties to their legal remedy on the agreement: Pennock v. Freeman, 1 Watts, 401; Brightly's Equity, sec. 220; Davidson v. Little, 22 Pa. 245; Brightly's Equity, sec. 218; Chess's App., 4 Pa. 52; Greenlee v. Greenlee, 22 Pa. 225; Pennock v. Freeman, 1 Walls, 401; Dalzell v. Crawford, 1 Parsons, 37.

If the land be described, evidence may be admitted in order to apply the description to the land, but the courts will not admit parol evidence, first, to describe the land sold and then to apply the description: Ferguson v. Staver, 33 Pa. 411; Hammer v. McEldowney, 46 Pa. 334; Mellon v. Davison, 123 Pa. 298.

OPINION BY MR. JUSTICE BROWN, January 4, 1909:

Nothing could be clearer than that one of these appellees, aided by the other, his wife, has most unconscionably attempted to avoid performance of his agreement with the appellants, and he would succeed but for the decree that has awaited him here since we heard this appeal. On February 23, 1901, David E. Unger, of Croyle township, Cambria county, this state, entered into an agreement, in writing, with the appellants, the material portion of which is as follows: "For and in consideration of the sum of twenty five ($25) dollars in hand paid, the receipt of which is hereby acknowledged, and for other valuable considerations hereinafter mentioned, said David E. Unger of the first part agrees to option until April 1, 1901, to George B. Stineman and Herman Haupt of the second part as above mentioned, all of the properties of E. J. Unger, deceased, in Croyle Township, together with the Heise and Bertenet additions, including buildings and schoolhouse, and all of the other buildings located on the lands, with the appurtenances thereto, including the coal and minerals of every description, in fee and

sell the same in its entirety, making a good and sufficient deed to the said parties of the second part, as their interests may appear, for the sum or price of seventeen thousand five hundred dollars ($17,500), in payment as follows: Eleven thousand dollars on April 1, 1901, and the balance on April 1, 1902. It is further understood and agreed by all parties to this contract that should the parties of the second part fail to make the first payment of April 1, 1901, then this agreement is null and void and not binding upon any of the parties to same." It may be here noted that the lands are described with sufficient certainty: Ross v. Baker, 72 Pa. 186; Ranney v. Byers, 219 Pa. 332.

On February 23, 1901, Unger was not the owner of the lands which he agreed to convey to the appellants. They belonged to his aunt, Annie C. Unger, having been devised to her by her husband, Elias J. Unger. Immediately after his execution of the agreement to sell the lands to the appellants for $17,000 Unger called to see his aunt in the city of Pittsburg for the purpose of purchasing them from her, evidently that he might be able to carry out his agreement with Haupt and Stineman. With his good faith to her we are not concerned, but the uncontradicted evidence is that he said to her he was unwilling to pay more than $12,000, but finally agreed to pay $14,000, and she executed an agreement to convey the lands to him at that price. Immediately afterwards, on February 27, he reported to the appellants that he had purchased the properties from his aunt, and at his request there was substituted for the agreement of February 21, one executed March 9, 1901, in which the properties are said to contain 216 acres, more or less, and the time for the conveyance of them was extended from April 1, 1901, to October 1, 1901, when the first payment of $9,000 was to be made. The balance was made payable on October 1, 1902. In asking for the extension of the time of the conveyance of the properties from April 1, 1901, to October 1, 1901, Unger said that he did so because his aunt wished him to remain on the farm during the summer of 1901.

On April 1, 1901, Annie C. Unger, in compliance with her agreement with David E. Unger, executed and delivered a

deed to him for the properties in controversy, which was recorded on the 16th day of the same month. A distinct finding of fact by the court below is that Unger purchased from his aunt "as agent of Herman Haupt and George B. Stineman." At the time he entered into the agreement with her he paid her $25.00, which was the amount of hand money that had been paid to him by Haupt and Stineman. It is true that in its opinion dismissing the bill the court below wandered from its finding that Unger had purchased as agent for Haupt and Stineman, but, as that fact was properly found, it ought to have been consistently followed.

On October 1, 1901, the appellants made a legal tender to Unger, in the presence of his wife, of the sum of $9,000, as required by the option of March 9, 1901, for their purchase of the land. This is another unequivocal finding of the court below. The tender was refused and Unger declined to execute the deed, but not for the reason set up in his answer for trying to repudiate his agreement with the appellants. Not a word was said either by him or his wife at the time of the tender indicating that she claimed to be the owner of the properties. What she then said to him was, "Don't you dare to sign your name to anything; you know what you have been told." Another finding of the court is that on October 1, 1902, the appellants went to New Castle, where Unger then resided, prepared to make him a legal tender of the balance required to be paid under the option; that in their effort to make said tender they made two visits to the residence of Unger, and not finding him there, sought him diligently in and about New Castle for the purpose of making the tender, but were unable to locate him, and that the tender was not actually made was not due to any fault on the part of the appellants. Not one of the foregoing facts is contradicted either by Unger or his wife. It is not without significance that he was not called as a witness either in his own behalf or in support of her story. It may be that shame over his bad faith kept him quiet at the hearing.

To avoid conveying to the appellants what Unger has agreed to convey to them, and which he purchased as their agent, the story of the wife is that the land was purchased for

her, and her husband holds title to it for her as trustee. She had actual knowledge on October 1, 1901, if not before, that he had agreed to sell the land to the appellants, and before that time—on September 20, 1901,—she had constructive notice of this agreement of her husband, for his option to the appellants was on that day recorded in the office of the recorder of deeds for Cambria county. With this knowledge she took a deed from him on September 29, 1902,—just a year after the time he was to have made title to the appellants. Of course all this cannot affect her title, if, as a matter of fact, her husband, on April 1, 1901, actually purchased the properties for her and paid for them with moneys belonging to her; but in this controversy between her and his vendees, in which they ask that he be compelled to convey to them lands in accordance with his agreement, which he purchased as their agent, and the title to which he took in his own name, the testimony must be clear, precise, convincing and satisfactory that he took the title for her instead of for himself or them, and that she received from other sources than her husband the moneys with which she paid for the properties: Olinger v. Shultz, 183 Pa. 469; Dumbach v. Bishop, 183 Pa. 602. Unger paid his aunt $5,000 when he took the deed from her on April 1, 1901, and secured the balance of the purchase money by a mortgage. The payment of $5,000 included four bonds, which Catherine M. Unger, the appellee, testified were her property, having been purchased out of her separate funds. The uncontradicted testimony of George C. Wilson, a most reputable member of the Allegheny county bar, is that he had, several years before, purchased these bonds for David E. Unger, her husband, and that after they were purchased he frequently cut off the coupons due on them and deposited the same to the credit of David E. Unger in the National Bank of Commerce of Pittsburg. Catherine M. Unger testified that she had received $3,000 from her father and $500 from a brother and that this money was used for the purchase of the bonds which her husband turned over to his aunt in part payment of the purchase money of the property. On cross-examination, however, she was compelled to admit that she had spent about $300 in

furnishing her house and had bought five or six horses, varying in price from $75.00 to $150; that she had bought ten cows, varying in price from $25.00 to $50.00; that she had bought a wagon for $100; that she had loaned a sister $1,000; that she had loaned a brother $300 and had bought two lots in Johnstown, paying for them $600. . She also bought a piano. She further admitted that in 1901 her sister must have owed her part of the loan of $1,000, and that she did not know when her brother paid her back. If she did get $3,000 from her father and $500 from her brother, there was not enough left of these moneys, according to her own testimony, to purchase the bonds. We can recall no case in which a married woman's claim to property taken by her husband in his own name was sustained on such flimsy testimony as was submitted here. The chancellor ought not to have entertained it for a moment.

The decree of the court below is reversed and the bill is reinstated and it is ordered, adjudged and decreed that the deed from David E. Unger to Catherine M. Unger, dated September 29, 1902, and recorded in the office for the recording of deeds in and for Cambria county in Deed Book, volume 147, page 194, be delivered by the said Catherine M. Unger to the recorder of deeds of the said county, to be by him canceled, with a proper note of the cancellation entered by him in the said Deed Book; and it is further ordered, adjudged and decreed that David E. Unger convey to Herman Haupt and George B. Stineman, the appellants, the lands fully mentioned and described in the deed of Annie C. Unger to him, executed April 1, 1901, as prayed for in the second prayer of the bill, the costs below and on this appeal to be paid by the appellees.