Mary Bridgeford *v.* Groh et ux., Appellants.

Argued March 13, 1931.

Before TREXLER, P. J., KELLER, LINN, GAWTHROP, CUNNINGHAM, BALDRIGE and DREW, JJ.

*Allen Hunter White,* and with him *Rowland C. Evans, Jr.,* for appellants.

*Hugh Roberts,* for appellee.

OPINION BY KELLER, J., April 15, 1931:

This is an action of dower *unde nihil habet,* brought by the plaintiff, Mary Bridgeford, to establish her interest in certain real estate that her husband, John J. Bridgeford, acquired and conveyed, without her joinder, since the effective date of the Intestate Act of June 7, 1917, P. L. 429; the said John J. Bridgeford having died intestate on October 29, 1926, and having previously (1914), and while still married to plaintiff, gone through a wedding ceremony with one "Helen C. Bridgeford" by whom he had two children. The land in question was conveyed to Bridgeford on May 19, 1919, subject to a mortgage. The same day he placed on it a second mortgage, in which "Helen," described therein as his wife, joined, and then conveyed the property, subject to both mortgages, to Helen. On Sep-

tember 29, 1921, Helen and her "husband," Bridgeford, deeded this property and the adjoining premises, which had been conveyed to her directly on September 22, 1919, to the defendants in this action, with covenant of general warranty.

The court left to the jury but one question of fact, viz., whether the plaintiff was married to Bridgeford in 1893, as alleged by her, in which event they were directed to find a verdict for the plaintiff, leaving the court to determine the interest in the land to which she was entitled, dependent on whether the clause in section 3 of the Act of 1917, supra, hereinafter quoted at length, is constitutional or not. The jury found in favor of the plaintiff; the court held that the clause of section 3 above referred to was constitutional; and entered judgment for the plaintiff accordingly, subject to certain deductions or allowances for improvements made by defendants, concerning which an appeal by the plaintiff is pending in the Supreme Court but does not affect the questions before us.

From this judgment the defendants have appealed to this court.

Three questions are raised by the appellants.

(1) Appellants offered to prove that a check for the surplus of $80.36, remaining out of $1,200 deposited by Bridgeford with the title company for settlement purposes when the property in question was purchased, was made out by the title company to "Helen C. Bridgeford," as showing that the purchase money had been paid by her, and that Bridgeford took title only as a trustee for her, and was not himself the owner; in which event the plaintiff would not be entitled to any dower or interest in the land. The court ruled otherwise, and held that the offer of evidence did not logically or relevantly support the conclusion that the purchase money had been furnished by or belonged to her. We agree with the ruling. The offer did not state the circumstances under which the title company

made out the check for this small amount to her order. It might have been directed by Bridgeford, as a gift to Helen, or he might have, for other purposes of his own, asked the title company to make out the check to her order, and it complied with that request. Nor is there any more probative force in the other offers made by the defendants for the same purpose and rejected by the court. The facts that Helen Bridgeford a few months subsequent to the first transaction took title to the adjoining property directly in her own name, and that when both properties were afterward sold she signed and approved the settlement as grantor and received the check for the purchase money, and that Bridgeford said to the defendants, when they were negotiating for the purchase of the properties, that Helen was the owner, are all irrelevant and inadmissible as tending to prove that Helen Bridgeford had paid the money for the purchase of this particular property. The properties did belong to her when they were sold to these defendants, and a statement by Bridgeford to that effect was the natural expression of an existing fact, having no relation to the original purchase of this property; it was equally natural that she should have attended the settlement with defendants and received the purchase money inasmuch as she was admittedly the owner at that time. As to her taking title to the adjoining property directly in her own name, this would throw no light on the question as to her own money being used in the purchase of the property involved in the present case; if anything it would indicate a difference in the two transactions, since in the property here involved the title was taken originally in the name of Bridgeford and transferred by him to her. None of the offers of evidence rejected, nor all of them together, measured up to the clear and satisfactory proof required: Haupt v. Unger, 222 Pa. 439; Byers v. Ferner, 216 Pa. 233.

(2) Appellants also contend that by an agreement

entered into between the plaintiff and her husband, John J. Bridgeford, in January, 1924, which purported to release and discharge him from any and all claims the plaintiff might have against him, she had thereby surrendered her inchoate dower right or interest in any lands previously aliened by him without her joinder. We agree with the court below in refusing it this effect, for three reasons: First, a release of her *"claims against him"* would not constitute a release of her rights against others in property which he had aliened; second, the release was to be voided if the sum of $9,000 was not deposited by Bridgeford within ninety days from the date of the agreement (subsequently extended a further period of ninety days from May 24, 1924), and there is no evidence in the record that such deposit was ever made; and, third, the entire agreement was illegal and void as against public policy, because its object was the securing of a divorce between them in order that he might legally marry the woman he was living with: Com. v. Glennon, 92 Pa. Superior Ct. 94; Shannon's Est., 289 Pa. 280, 283; Mathiot's Est., 243 Pa. 375. In Kaiser's Est., 199 Pa. 269, relied on by appellants, the wife for a sufficient and valuable consideration signed a separation agreement by which she released all her rights in the real and personal property he *then* possessed or might possess in the future, and the Supreme Court held that she could not claim dower in the land *of which he died seised,* even though she had not separately acknowledged the agreement. It does not apply here.

(3) Appellants' third contention—and this relates solely to the quantum of the plaintiff's interest—is that the clause of section 3 of the Act of 1917 above referred to is unconstitutional (Art. III, section 3), because relating to a subject not clearly expressed in the title; and if overruled on that point, then, because the act embraces more than one subject. The clause in question reads as follows: "Section 3. The shares

of the estate directed by this act to be allotted to the widow shall be in lieu and full satisfaction of her dower at common law, so far as relates to land of which the husband died seised; and her share in lands aliened by the husband in his lifetime, without her joining in the conveyance, shall be the same as her share in lands of which the husband died seised.'' The title of the act is ''An Act relating to the descent and distribution of the real and personal property of persons dying intestate; and to provide for the recording and registering of the decrees of the orphans' court in connection therewith, and the fees therefor.'' But this is immediately followed by a ''Table of Contents,'' which for constitutional purposes should be considered as belonging to the title, and in it we find the following: ''Section 3. Widow's share in lieu of dower; share in land aliened by husband.'' Furthermore the learned President Judge of the court below, in his opinion refusing a new trial and judgment non obstante veredicto, points out that dower is an estate by descent, rather than by purchase, because it vests ''by the single operation of law.'' See Blackstone's Commentaries, Lewis' Edition, Book 2, p. 667, Sec. 201, and note referring to IV Kent Comm. 374; Pemberton v. Hicks, 1 Binney 1. In the last named case Mr. Justice YEATES said (p. 16), ''It is fully settled that titles by the curtesy and in dower come in by descent, merely by act of law, Co. Litt. 18 b;'' and in Cooke v. Doron, 215 Pa. 393, which held that title by curtesy is one by descent, the opinion writer, Mr. Justice ELKIN said: ''Titles by curtesy and in dower, arising by operation of law upon the death of the wife or husband, as the case may be, seem to properly fall under the head of title by descent.''

The learned judge of the court below further said: ''It is true that a widow does not take her dower as an heir of the husband. But the point is that a title may come by descent and yet not as by way of in-

heritance to an heir. All that is necessary is that it should vest by "the single operation of law." It would seem, therefore, that dower, being a title by descent, is properly included within the title "relating to the descent" of property of persons dying intestate. The confusion evidenced in the argument of defendants arises from the fact that they assume that the title indicates that the property, the descent of which is involved, must be owned by the person dying intestate at the time of his death...... There is nothing, however, in the title of the act which indicates that it refers only to such estate as that of which the decedent dies seised...... In the matter of dower, ......the wife takes by descent from the person who owns the property (the husband) even though he has aliened it before his death. It is incorrect in this sense to say, as argued by the defendants, that it is her own property, and that it is acquired by her independently of her husband's title. On the contrary she obtains it only by and through his title; her right inchoate attaches to it when he purchases it and still exists in her when he aliens it, but that right becomes consummate only upon and by virtue of his death, and it is at the time of his death and by virtue of his death that she obtains by descent the consummate title to the dower right, even though he himself is then no longer seised of the title."

It is true, as pointed out by counsel for appellants in his able and interesting argument, that previous acts relating to the descent and distribution of the estates of intestates (April 19, 1794, 3 Sm. L. 143, April 8, 1833, P. L. 315) which fixed the interest of a widow in her husband's real estate and provided that the share so allotted her should be in lieu and full satisfaction of her dower at common law, were held not to apply to her common law dower in lands aliened by her husband without her joining in the conveyance, but that was because it was designedly omitted

from the act. "The simple absence of every direct expression, indicative of a design to bring lands aliened within the purview of the enactment, ought, in itself, to be accepted as sufficiently proving no such design was entertained; for surely, had the lawmaker intended so important a change in the existing law, he would not have left it to a doubtful inference drawn from inconclusive reasoning": Borland v. Nichols, 12 Pa. 38, 42. In the Act of 1917 the change is clearly and unmistakably expressed.

We then come to the question whether by reason of the inclusion of the clause above quoted the Act contains more than one subject. We think not. A broad and comprehensive statute of this kind necessarily contains many subjects which could properly be treated under different heads, but if the subjects are so interrelated that they are all germane to the main general subject of the act, there is no violation of Art. III, sec. 3 of the Constitution. If it were otherwise, there could be no comprehensive statutes codifying the laws relating to a broad, general subject. For example, the first and fifth sections of the Act of May 4, 1855, P. L. 430, "Relating to certain duties and rights of Husband and Wife and Parents and Children" contain matter that has been incorporated into statutes relating to wills, intestate estates, etc., (See inter alia, Wills Act of 1917, P. L. 403, p. 410, sec. 23-a; Intestate Act of 1917, P. L. 429, p. 435, sec. 5) yet the inclusion of these matters in those acts did not invalidate them, although they also related to the rights of husband and wife, because they were germane to the general subject being legislated upon. So, too, we think the subject matter of the 3d section of the Intestate Act of 1917, supra, is sufficiently germane to the general subject of the Act as properly to come within its purview.

We are influenced in this conclusion to some degree

by two very recent decisions of the Supreme Court. In Merrick v. DuPont, 285 Pa. 368, the opinion writer (Mr. Justice Simpson) gave careful consideration to the very clause of the Intestate Act of June 7, 1917, supra, now under scrutiny, and if he had been of opinion that the clause was unconstitutional, as is suggested by these appellants, the obvious course would have been to say so, rather than hold that its effect was not retrospective but only prospective. In that connection he said: "These two constructions cannot coexist; hence we must find a way to reconcile the two provisions, and this may readily be done by treating the act as prospective only. Thus considered, section 1 will give the widow the interest specified in section 2(a) in lands 'which shall not have been sold' by decedent before the passage of the act; and by section 3 'her share in lands aliened by the husband in his lifetime [after the passage of the act]......shall be the same as her share in lands of which the husband died seised.' This is the only reasonable reconciling interpretation to be given the two sections, and it has the additional merits of according with the rule as to prospective statutory operation, of avoiding a possible injustice to purchasers of land before the act was passed, and of so construing the statute that it will agree, as nearly as may be, with the theretofore existing course of the common law."

So also in Scaife v. McKee, 298 Pa. 33, which dealt with the same Intestate Act of 1917, supra, as to its effect upon estates by the curtesy, the same learned Justice considered thoroughly the constitutionality of the Act as respects its "containing more than one subject which shall be clearly expressed in its title," (Art. III, sec. 3), and held that it did not offend the constitution in this respect; that the latter did not require the title of a statute to be an index of its contents, but presupposed a reasonably inquiring state of mind, which would follow the trail indicated by the main

148

part of the title into the body of the act; and that as an estate by the curtesy as it existed prior to the Intestate Act of 1917 was an estate by descent, and as the title to that statute refers to estates by descent, it is sufficient, under the constitutional provision, to give notice to all who claim or should thereafter claim to have estates by the curtesy.

We think that the application of the reasoning in that case to this one requires a like ruling.

The assignments of error are all overruled.

As an appeal by the plaintiff from the judgment is pending in the Supreme Court, we shall not affirm it but dismiss the appeal.

Appeal dismissed.