## Hines Estate

*David H. Moskowitz*, for claimant.

*Robert K. Baker*, for respondent.

SATTERTHWAITE, P. J., January 11, 1968.—This litigation is concerned with alleged rights of statutory dower asserted by one who claims to be decedent's widow, with respect to certain real estate conveyed by decedent in his lifetime without her joinder. This realty is presently held by the devisee under the will of the surviving grantee of such inter vivos deed of conveyance from decedent. The proceedings have been marked with uncertainty, ambiguity and resulting undue delay, but now appear to be finally ripe for ultimate decision on the merits.

At the outset, a problem of the jurisdiction of this court over the subject matter presents itself, a matter which requires a summary of the positions of each of the parties.

Decedent, Cornelius S. Hines, as grantee named in a deed dated October 10, 1930, and duly recorded, became the record owner of three properties known as 123-125-127 Wood Street, Bristol, Bucks County, Pa. By ceremony performed in Elkton, Md., on November 27, 1933, said Cornelius S. Hines and one Lillian M. Ricketts purported to marry. By deed dated October 25, 1947, to a straw party, and deed dated November 6, 1947, back from the straw, said Cornelius and Lillian Hines, as husband and wife, conveyed title to said premises to themselves, the latter deed expressly characterizing their resulting interest and estate "as Tenants by the Entireties". Cornelius S. Hines (decedent) thereafter died on June 24, 1958. Lillian survived, but died on August 11, 1964, leaving a will, duly probated, by which she left her residuary estate, which would include her interest in said real estate, unto her son, William Asher Kline (Kline).

The instant proceedings were commenced on August 31, 1965, by the filing of a complaint in ejectment in the common pleas court of this county by Violet Lattanzi, administratrix of the estate of Cornelius S.

Hines, deceased, naming Kline as defendant. The administratrix (sole plaintiff in the action) had qualified as such as the nominee of one Ida Virginia Hines (Ida) who claimed to be decedent's widow by reason of an undissolved marriage to him in 1918. The theory of the complaint was that the personal representative was entitled to possession of the subject realty for the reason that the 1947 deeds from and to decedent and Lillian were "null and void" because they were not, in fact, husband and wife. A count was also stated in the complaint claiming rentals alleged to have been improperly collected by Lillian and by Kline subsequent to decedent's death.

In due course, Kline filed preliminary objections in this action, contending that exclusive jurisdiction was in the orphans' court. Pending disposition of this question, the administratrix on December 23, 1965, filed a new proceeding, this time in the orphans' court, although purporting to bear the same caption in ejectment, whereby she sought and obtained a citation directed to Kline requiring him to show cause why he should not be restrained from collecting further rent from the tenants of the subject real estate. Preliminary objections to this petition were filed and still remain undetermined, although the disposition of the other proceedings by this opinion now render moot the additional questions thereby raised.

On March 29, 1966, solely by reason of a stipulation of counsel for the administratrix and counsel for Kline, and without argument or decision of the merits of the preliminary objections challenging the jurisdiction of the common pleas, that court entered an order certifying the entire record of the ejectment action (consisting only of the complaint, the preliminary objections, the stipulation and the subject order) to the orphans' court. Kline thereafter filed an answer to the complaint, denying and demanding proof of

Ida's marriage to decedent and the various ramifications of her status as his alleged widow; and further averring by way of new matter that, although the administratrix was the nominal moving party, the actual and real claimant was Ida, who was barred by laches by reason of her delayed claim and Lillian's contributions and improvements to the premises, and the difficulties of defending the former and proving the latter in view of Lillian's death in 1964; and further that Ida herself had lost any status which she might otherwise have had as decedent's widow because of her cohabitation for many years with one John Jackson as purported wife and husband in Johnstown, Pa. A reply to new matter placed the latter questions in issue.

On this state of the pleadings, the matter came on for hearing in the orphans' court. The sole witnesses were Ida and Kline, and each respectively objected to the other's competency under the "Dead Man's Act", the Act of May 23, 1887, P. L. 158, sec. 5, cl. (e), 28 PS §322. The court tentatively overruled each of these objections, subject to further consideration. Subsequently, after a delay for the filing of briefs, the court realized for the first time that the administratrix, the sole record plaintiff or claimant, had no interest or standing in the premises, and informally so notified counsel, suggesting that Ida personally should have been the party-claimant. After a still further and unexplained delay, Ida was permitted by stipulation of counsel to intervene and to adopt the pleadings filed by the administratrix "with a prayer for relief demanding that Ida Virginia Hines be granted possession of the premises which form the subject matter of this litigation".

Ida's position in these proceedings, regardless of the informality of her counsel's specification of the full ramifications thereof, is founded upon her funda-

mental premise that she is decedent's surviving widow and that she has the consequent right to the estate or interest given by law to one standing in that relationship. Section 5(a) of the Intestate Act of April 24, 1947, 20 PS §1.5, provides that the widow's share of her husband's estate shall be in lieu and full satisfaction of common-law dower, and further directs, in presently relevant part, that ". . . her share in real estate aliened by the husband in his lifetime, without her joining in the conveyance, shall be the same as her share in real estate of which the husband dies seised . . ."

Thus, since (as she alleges, but the fact is not conceded and the evidence on the subject is vague and unsatisfactory hearsay) decedent died intestate without issue or collateral heirs, she claims that she, as his surviving widow, would take his entire estate, and, hence, that she alone is entitled under this statutory provision to the whole of the subject real estate which he had conveyed away in his lifetime without her joinder.

Against this background, consideration of the jurisdictional issue is in order. Neither the Intestate Act of 1947, nor its predecessor, the Intestate Act of 1917, changed the common-law attributes, limitations and qualifications of a widow's common-law right of dower (including that in realty conveyed by her husband without her consent), other than to redefine the quantum or measure of such interest: Balkiewicz v. Asenavage, 406 Pa. 501 (1962). Accordingly, prior to 1951, since orphans' courts were courts of only limited jurisdiction, and since no legislation then conferred authority upon such tribunals to treat of real estate of which a decedent did not die seised or possessed, a widow's dower interest in land so transferred without her joinder by a decedent in his lifetime could not be asserted by proceedings for partition or otherwise

*in the orphans' court;* her exclusive remedy was *in the common pleas,* either by action of dower (until abolished by the Act of May 31, 1933, P. L. 1091, 12 PS §6) or by equity partition (now superseded by Pennsylvania Rule of Civil Procedure 1551, et seq.) See the exhaustive opinions in Stockdale's Estate, 29 Dist. R. 1013 (1920), and Bridgeford v. Groh, 9 D. & C. 5 (1927), and the many authorities therein cited and discussed. Compare Balkiewicz v. Asenavage, supra, 406 Pa. at 508, and King v. Haller, 28 D. & C. 2d 365, 367 (1962).

However, section 302(1) of the Orphans' Court Act of August 10, 1951, as amended, 20 PS §2080.302, enlarged upon the statutory scheme of earlier legislation in this connection. This provision, new in the Act of 1951, conferred *concurrent* jurisdiction upon an orphans' court to determine "the persons to whom the title to real estate of a decedent . . . has passed by devise or descent . . ." (with a further proviso, of course, to preserve *exclusive* jurisdiction to distribute realty comprising an actual and present part of an estate being administered under the jurisdiction of the orphans' court).

A widow's dower estate or statutory interest in lieu thereof, even as asserted in lands aliened by her deceased husband in his lifetime, does qualify within the meaning of this language as an interest in realty *of* such decedent as to which title has passed to her by operation of law, that is, specifically, by *descent*: Bridgeford v. Groh, 13 D. & C. 704, 707-08 (1930), 102 Pa. Superior Ct. 138, 143-45 (1931), 305 Pa. 554, 556 (1932). The common pleas and both appellate courts in Bridgeford sustained the constitutionality of section 3 of the Intestate Act of 1917 (which, in language identical to that of section 5(a) of the Intestate Act of 1947, above quoted, measured the quantum of a widow's share in lands aliened by the husband

in his lifetime without her joinder as the same as her share in realty of which he died seised), against the argument that the subject matter of this provision was not included within the title of the act, which was "An act relating to the *descent* and distribution of the real and personal *property of persons dying intestate*; . . ." (Italics supplied.)

Each court agreed that the right of dower in such lands is one originating by "descent", and that it was a right which was within the subject matter of the title of the act, since the scope of this legislative language should not be limited to lands which decedent still owned at his death. Such a construction of the similar phraseology of section 302(1) of the 1951 Act, supra, would be equally appropriate, and the jurisdiction of this court in the premises is, therefore, properly invoked.

The next question is the competency of the respective witnesses to testify as to matters prior to decedent's death. As a preliminary to these determinations, it is convenient at this point to analyze and consider the nature and extent of the rights and interests in the subject real estate of the respective parties to the proceeding.

In the first place, it would seem clear, under any view of the case, that all rights to the entire original title and estate acquired by decedent in 1930 (subject only to the possible or inchoate statutory dower interest belonging to Ida if she was his wife and was not otherwise barred) have passed to, and are now vested in, defendant-respondent Kline absolutely and in fee simple. If Lillian, in fact, became decedent's lawful wife in 1933 and still was such at the time of the 1947 conveyances, such a conclusion is self-evident; and under the circumstances of this case, the same result obtains, except for the possibility of Ida's statutory dower rights, even if decedent, in fact, was still

married to Ida in 1933 and, hence, could not then have lawfully married Lillian.

Contrary to counsel's position as pleaded in the ejectment complaint, the 1947 deeds to the straw party and back to decedent and Lillian were not void or even voidable, notwithstanding that they could not have been legally effective to create a tenancy by the entireties if the marital relationship, in fact, did not then subsist between the grantees. A married man may validly convey his real estate without the joinder of one who may, in fact, be his wife, subject, of course, to the latter's inchoate statutory dower rights: Davis v. Davis, 23 D. & C. 2d 52, 59 (1960) ; and see Smigell v. Brod, 366 Pa. 612, 614 (1951).

The problem, therefore, is not one of a void or voidable conveyance, but rather of determining, from the expressed intention of the parties to the deed, if such there be, the nature of the tenure actually created in the grantees if it legally cannot be as tenants by the entireties. There are two obvious possibilities: they may take either as tenants in common or as cotenants with right of survivorship. Fortunately, the legal standards for distinguishing between these alternatives, at least for present purposes, have become fairly well crystallized.

Prima facie, a conveyance to two or more parties not husband and wife, without more, creates a tenancy in common; in the absence of expressed intention to the contrary, the Act of March 31, 1812, P. L. 259, 5 Sm. L. 395, 20 PS §121, precludes the attribute of survivorship as an inherent incident even if otherwise a joint tenancy might have been created. The mere identification of the grantees in the deed as husband and wife has been held not to be a sufficient manifestation of intention to provide for survivorship to overcome the Act of 1812; and if the parties, in fact, are not married, they take as tenants in common:

Teacher, Exrx. v. Kijurina, 365 Pa. 480 (1950); First Federal Savings and Loan Association of Greene County v. Porter, 408 Pa. 236 (1962).

On the other hand, if the deed adds any further expression of intention considered to be equivalent to a statement of desire to establish a right of survivorship, such purpose will be given effect to the extent legally permissible. A joint tenancy with the attribute of survivorship will, therefore, be inferred where the grantees, although, in fact, not husband and wife, not only are designated as such but their tenure is specifically stated as "tenants by the entireties", or words of equivalent import; such a result will most closely carry out their expressed purpose: Maxwell v. Saylor, 359 Pa. 94 (1948); Bove v. Bove, 394 Pa. 627 (1959); Frederick, Admr. v. Southwick, 165 Pa. Superior Ct. 78 (1949); Costello Estate, 26 D. & C. 2d 481, 489 (1962).

The latter line of cases is applicable here: The 1947 deed from the straw back to decedent and Lillian not only identified them as husband and wife but also granted the premises to them expressly "as Tenants by the Entireties". Accordingly, even if decedent and Lillian never, in fact, achieved the status of legal marriage, the latter nevertheless did acquire full and complete title to the whole of the subject premises, as survivor on the former's death, subject only to Ida's possible statutory dower interest; the situation was not one where decedent's estate would still have an undivided half interest after his death, and Lillian would hold merely the other undivided half interest, as tenants in common.

Parenthetically, it may here be noted that, for the reasons just expressed, decedent's personal representative, the sole original plaintiff-claimant, has no interest or standing whatsoever in these proceedings. There was no estate in the subject realty remaining

in decedent upon and after his death for the administratrix to recover, administer or distribute. Nor would she, as administratrix, have anything to do with Ida's claimed statutory dower right therein; such inchoate interest is a matter personal to the spouse and is not the responsibility of the personal representative. Therefore, since the latter was an entire stranger to the subject matter of the proceedings regardless of the merits of Ida's contention of widowhood, the claim, demand and prayer for relief of the administratrix should be denied, refused and dismissed.

Against this analysis of the interests of the respective parties, consideration may now be given to the problem of competency of Ida and Kline, respectively, as witnesses under the "Dead Man's Act". It would seem obvious from the foregoing that decedent's interest in the "thing in action", to wit, his marital relationship vis-a-vis Ida and the incidents arising therefrom insofar as his former real estate is concerned, has passed by prima facie valid transfers to Kline, and is now represented of record herein by him as the residuary devisee of the survivor of decedent's intervivos grantees. Accordingly, Kline is not adverse and is not disqualified under the Act of 1887, and the objection to his testimony was properly overruled. Conversely, Ida quite apparently is a surviving party and her interest most patently is adverse to that of decedent; she, therefore, would not be qualified to testify as to predeath matters under the usual rule of the Act of 1887. See Pronzato v. Guerrina, 400 Pa. 521, 530-32 (1960), and the authorities therein cited and discussed. Moreover, this case also involves a second decedent, Lillian Hines, who died in 1964; under section 5(e) of the Act of 1887, her interests, which are likewise represented on this record by Kline and to which Ida is ob-

viously adverse, would equally seem to bar Ida's testimony as to matters prior to her death.

The question still remains, however, as to whether Ida's competency as a witness may nevertheless have been established by some other statutory authorization. The special provision of section 5, cl. (e), of the Act of May 23, 1887, P. L. 158, 28 PS §322, supra, removing from the general disqualification of that clause controversies "between parties respectively claiming such property *by devolution* on the death of such owner" (Italics supplied) is of no assistance to Ida. While *she* may be said to claim by mere operation of law or "devolution" from decedent, *Kline's* interest does not so arise; rather, he is regarded in this context as entitled by voluntary action of the decedent, termed "title by purchase", as contradistinguished from title by "devolution": Ray's Estate, 304 Pa. 421, 433-34 (1931), and precedents therein considered.

Ida was rendered competent to testify to limited matters by section 6(d) of the Intestate Act of 1947, 20 PS §1.6(d), but it is not clear that her general disability was thereby affected beyond the specifics of that statutory provision. Section 6 deals solely with the issue of forfeiture, by reason of desertion or non-support, of the intestate shares of a surviving husband or wife, as well as forfeiture by a slayer. Subsection (d) thereof, as did its predecessor, the Act of April 24, 1931, P. L. 46, 28 PS §329, in terms, made the surviving spouse competent in this context to testify, not generally, but only "as to all matters pertinent to the issue of forfeiture under this section". See Fellabaum v. Alvarez, 165 Pa. Superior Ct. 173, 179 (1949).

Does section 6(d) by implication render a surviving alleged spouse competent to testify, not merely on the subject of desertion or other problems relating to the barring of her interests as a spouse, but also as to the further matter of the very existence of the marital

relationship itself? Neither the statute nor Fellabaum nor any other decision brought to the court's attention specifically answers this question. The problem was, however, obliquely referred to, without discussion or recorded rationalization, in Wagner Estate, 398 Pa. 531 (1960). In that case, one of the issues was whether or not the alleged widow had, in fact, remarried decedent by a common-law marriage following their divorce from an earlier marriage to each other. A further and separate issue was whether she was thereafter guilty of desertion so as to forfeit under section 9 of the Wills Act of April 24, 1947, 20 PS §180.9, her right to elect to take against her husband's will. (Section 9(d) of the Wills Act would likewise render the surviving spouse a competent witness as to the issue of forfeiture, in language identical to that used in section 6(d) of the Intestate Act, supra.) Justice Bok noted (398 Pa., at page 536), that with respect to the controversy as to the actual fact of remarriage, "claimant's lips are sealed by the Dead Man's Act, May 23, 1887", but that such status was adequately established by other evidence and the surrounding circumstances. On the other hand, later in the opinion on the subject of forfeiture by alleged desertion (398 Pa., at pages 539-40) the evidence as to the circumstances of the widow's withdrawal from decedent's household was considered and found sufficient to justify her separation, with the terse and unelaborated comment that the same had not been dealt with by the opinion of the court below "but [the widow's own testimony] we think was competent". No reference whatsoever was made to section 9(d) of the Wills Act throughout the opinion.

From the ostensibly limited scope of section 6(d) of the Intestate Act, plus the apparent distinction, at least assumed if not decided in the Wagner case, it would seem to be arguable with some force that if the

fact of marriage be disputed, as here, the alleged widow would be incompetent under section 5, clause (e), of the Act of 1887, 28 PS §322, to testify to that issue, notwithstanding that she would be competent under section 6(d) of the Intestate Act with respect to any matters subsequent to the marriage which might bear upon whether or not her marital rights had been forfeited. If this view of the law be taken in the instant proceedings, Ida's case must fall for lack of proof of her status as decedent's wife, regardless of other considerations. While a marriage certificate documenting the marriage of "Cornelous Hines" [sic] and "Ida V. Gaines" on December 30, 1918, at Johnstown, Pa., was received in evidence, the identification of the parties named therein as being, in fact, those individuals with whom the within litigation is concerned (and the fact thereof had been denied in the pleadings) rested solely and entirely upon Ida's own testimony.

The court feels, however, that there is sufficient uncertainty as to the implications of section 6(d) that, when coupled with the modern enlightened policy of the law to regard all witnesses as competent unless clearly disqualified, the within proceedings should not be decided solely on the technical proposition that Ida was incompetent to establish the fact of marriage to decedent and the continuance of that marital relationship. Accordingly, as an alternative ground of disposition, her testimony will be assumed to be competent in all respects, and the significance, weight and sufficiency thereof will be analyzed and considered. Even on this approach, however, her claims must be denied and refused.

For this alternative purpose, the court (with some misgivings on account of Ida's uncertainty of recollection as to both the time of her still earlier marriage to one Clifford Gaines [apparently in 1914 when she was only 14 years of age] and the date of Gaines'

death, as well as many other similar equivocations and inconsistencies in her testimony) will assume that she and decedent were lawfully married in 1918 in Johnstown; that they lived together as husband and wife in that city and in Detroit, Mich., for a few years; that sometime in the early 1920's they separated, never to cohabit again, Ida returning to Johnstown where she has since continued to live to the present; that at a time not established in the record (Ida's testimony that it was in the early 1940's is not convincing), decedent came to Ida in Johnstown to obtain her "signature" to certain (undisclosed) "divorce" papers; that (as stipulated) there is no record in either Bucks County or Cambria County of any divorce proceedings instituted by decedent against Ida or vice versa. The court will also assume that, notwithstanding the ordinary presumption of innocence and consequent validity of decedent's marriage to Lillian in 1933, the burden would nonetheless be upon Kline as the party relying upon that marriage (and he has not discharged such burden) to overcome the countervailing and overriding presumption of the continuance of decedent's earlier marriage to Ida in 1918. See D'Ippolito Estate, 420 Pa. 541, 543-44 (1966), and the precedents therein cited and discussed.

Even if Ida be given the probably unwarranted benefit of these assumptions, however, she still must be unsuccessful in these proceedings.

In the first place, the court is not persuaded that she has successfully carried the burden of proving that her withdrawal from the marital domicile with decedent in Detroit in the early 1920's was justified by reasonable cause. Accordingly, the inference of legal desertion on her part arises, and she would be barred by section 6(b) of the Intestate Act of 1947, 20 PS §1.6(b). While she offered her own testimony in generalized, uncorroborated and unconvincing terms as

to physical mistreatment by decedent, her removal from decedent's home was delayed for no appealing reason beyond that which would reasonably have been required were the situation so acute as she would have the court believe. Thereafter, she lived in Johnstown with her mother and members of her sister's family, refusing even to talk to decedent on one occasion when he visited her mother's home sometime shortly after the separation, admittedly for the purpose of attempting to have her resume the marital domicile with him. At no time did she ever attempt to obtain support for herself or otherwise to achieve vindication for the wrongs which she claims decedent inflicted upon her. In short, her evidence no more carried the burden of conviction than did that of decedent's widow in McNeal Estate, 5 Bucks 269 (1956), where a problem of forfeiture for desertion under strikingly similar circumstances was litigated in this court.

Apart from these considerations, however, and beginning with the occasion which she fixed as being in the early 1940's, (more probably in the early 1930's in view of decedent's "marriage" to Lillian in 1933) when decedent came to her in Johnstown to have her "sign" the mysterious "divorce" papers, and she did so, it is clear that thereafter the parties' separation was consensual, and that each from that time forward regarded the marriage as completely terminated and abandoned. That Ida was in accord with this understanding is manifest from the conceded and documented fact that, without further check or corroboration of this informal "divorce" so sought by decedent, she thereafter "married" one John Jackson (representing herself, incidentally, to be a "widow" in the license application) on June 7, 1943, not in Johnstown but at Cumberland, Md., and subsequently lived with him as his wife in Johnstown until his alleged death in 1956.

Under these circumstances, even though Ida and decedent, in fact, may have been married and may have never been divorced, and, hence, that both were guilty of adultery upon their respective "remarriages", Archer Estate, 363 Pa. 534 (1950), would establish that neither may thereafter claim property as the surviving spouse on the death of the other under such forfeiture statutes as section 6 of the Intestate Act of 1947, supra. As indicated by the lower court opinion in Archer, reported in 67 D. & C. at 609, and quoted with approval by the Supreme Court in 363 Pa., at pages 538-39:

". . . [W]here there had been a separation by mutual consent and thereafter both spouses enter into adulterous relationships with paramours, neither spouse may share in the other's estate, irrespective of who was the first to transgress".

In conclusion, it may finally be noted that Ida's case presents no equities whatsoever. Notwithstanding that, by her own statements, she admittedly knew from 1942 on that decedent lived in Bristol and contemplated marriage with another, and further that she learned of his death shortly after it occurred in 1958 and knew at that time that he had property, although not the nature and extent of it, she nevertheless took no action to assert her alleged rights until 1965. In the meantime, while Kline, having no cause to anticipate that he might be called upon to do so, was unable to document or particularize the financial extent thereof, it is apparent that decedent and Lillian kept up and maintained, and possibly even improved, the subject real estate during their many years of occupancy, and that Ida in no way contributed thereto. After the long lapses of time here involved, and the ostensible acquiescence in the status quo by all concerned, no equitable reason appears why

this court should not leave the parties where they have placed themselves.

### FINAL DECREE

And now, January 11, 1968, for the reasons stated in the foregoing opinion, the claim, complaint or other action by Violet Lattanzi, administratrix of the Estate of Cornelius S. Hines, deceased, and by Ida Virginia Hines, or either of them, respectively, of, in and to the real estate described and mentioned in the within proceedings, or of, in and to the rents, issues and profits thereof, are hereby denied, refused and dismissed; and it is hereby expressly adjudicated that said administratrix and said Ida Virginia Hines, or either of them, respectively, have no title, interest or estate in said realty by descent or otherwise from or through said decedent Cornelius J. Hines. Each party shall bear her or his own costs.