Fellabaum, Appellant, *v.* Alvarez et ux.

174

Argued April 13, 1949. Before RHODES, P. J., HIRT, RENO, DITHRICH, ARNOLD and FINE, JJ. (ROSS, J., absent).

*H. Russell Stahlman,* with him *Victor E. Riva* and *Stahlman & Carson,* for appellant.

*Sherman H. Siegel,* with him *Louis R. Oppenheim,* for appellees.

OPINION BY RENO, J., July 15, 1949:

Appellant filed a bill in equity to compel the conveyance to her of an undivided one-third interest in certain real estate which her deceased husband, Harry Fellabaum, had conveyed to appellees without her joinder. The bill was dimissed on the ground that appellant had forfeited her right in the decedent's real estate by her wilful and malicious desertion for one year and more prior to his death.

The claim is based upon the Act of June 7, 1917, P. L. 429, §3, 20 PS §31, which provides: "The shares of the estate directed by this act to be allotted to the widow shall be in lieu and full satisfaction of her dower at common law, so far as relates to land of which the husband died seised; and her share in lands aliened by the husband in his lifetime, without her joining in the conveyance, shall be the same as her share in lands of which the husband died seised. . . ."

Appellees defended, and the court below based its decision, upon §6 of the Act of 1917, supra, §6, 20 PS §42, which provides: "No wife who shall have, for one year or upwards previous to the death of her husband, wilfully and maliciously deserted her husband, shall have the right to claim any title or interest in his real or personal estate after his decease, under the provisions of this act."

The findings of the chancellor were approved by the court en banc. They have the force and effect of a jury verdict, and will not be disturbed by an appellate court if supported by evidence of the quality required. *Christy v. Christy,* 353 Pa. 476, 46 A. 2d 169. We have attentively examined the record, and our judgment is that the evidence amply supports the findings. Only three excep-

tions to the 24 findings are made subjects of assignments of error. The findings are briefly summarized in the paragraphs following.

The property here involved was acquired by Fellabaum and his first wife' as tenants by the entireties in 1919. Upon her death in 1924 he became sole owner. After the wife's death, appellant went to his home as a housekeeper. In 1930 decedent's son Fred, who was 30 years of age, became a member of the household. Appellant and decedent were secretly married on October 20, 1932 in Wellsburg, West Virginia. At that time he was 60 years of age and she was 51. Appellant's status as a housekeeper did not change, and she continued to maintain a separate bedroom on the first floor. She was never known to be Fellabaum's wife until she brought this action. Shortly after their marriage the husband was forced to give up his employment because of poor health. He had suffered a stroke which seriously crippled him. For about a year appellant worked during the day for a family in the borough as a domestic. Fred gave his father an average of $150 a month for the support of the home and Fellabaum received old age assistance, and these provided the sole subsistence for the family. The relations between the decedent and appellant were amicable, but there were frequent quarrels between Fred and appellant's 18 year old son, who also lived in the house. These reached a climax in April, 1938, and the young boy left the house. Appellant then told her husband that he would have to make a choice, and either put Fred out of the house or she would leave. Several days later the decedent informed her that he was unable to maintain the home and he would have to choose Fred, whereupon appellant left. The important finding on this point is printed in the margin.[1]

---

[1] "20. In April, 1938, the plaintiff said to Harry H. Fellabaum, 'You can have your choice between your son Fred, and I.' Harry H. Fellabaum said, 'I am not able to support the home; I guess I

From 1938 to 1941, (except from the fall of 1938 to the midsummer of 1939), appellant returned to the house during the day and did the cleaning, cooking and washing. In October, 1941, Fred was married, and at his request appellant worked at the house for four days while Fred was on his honeymoon. After Fred and his wife returned to the home appellant never returned. There was no evidence that appellant was ever paid cash remuneration for her services, but during 1939 and 1940 decedent did send groceries almost weekly to appellant's home. The marital union was obviously one of convenience in which appellant received free board for herself and her son in return for her services as housekeeper.

Harry Fellabaum conveyed the property to the appellees in August, 1946, by a deed in which he described himself as a widower, and went to live in a home purchased by his son. He died intestate and without an estate on June 9, 1947, and one month later his widow filed this bill.

The mere fact that the parties lived apart is not controlling and would not bar appellant's dower rights unless there had been a desertion under the Act. Desertion differs from separation. Desertion is an actual abandonment of matrimonial cohabitation with intent to desert, without cause or consent of the other party. *Lodge's Est.*, 287 Pa. 184, 186, 134 A. 472; *Braum Est.*, 88 Pa. Superior Ct. 109, 112. It is presumed to be wilful and malicious where one spouse withdraws from the common home without legal reasonable cause. *Lodge's Est.*, supra; *Nixon Est.*, 104 Pa. Superior Ct., 506, 511,

---

will have to take him for my choice.' After several days' consideration, when the plaintiff was prepared to leave the Fellabaum home, she said to Harry H. Fellabaum, 'Is that your choice?' 'What are you going to do?' He replied, '*I don't want you to leave;* but I guess I will keep Fred because I am unable to support the home.' After this she left and lived elsewhere thereafter." (Emphasis added.) No exception was taken to this finding.

158 A. 172; *Sloan v. Sloan,* 122 Pa. Superior Ct. 238, 242, 186 A. 219; *Urbaczewski v. Urbaczewski,* 158 Pa. Superior Ct. 614, 615, 45 A. 2d 925.

Appellant accepted the burden of proving that her withdrawal from the matrimonial domicile was not a wilful and malicious desertion. *Mehaffey Est.,* 102 Pa. Superior Ct. 228, 234, 156 A. 746; *Mertz v. Mertz,* 119 Pa. Superior Ct. 538, 180 A. 708; *Heath Est.,* 156 Pa. Superior Ct. 597, 600, 41 A. 2d 353. The record discloses that appellant was not mistreated in any way, and her sole reason for leaving was because of the petty bickering and quarreling between Fred and her son. Clearly this was not such a sufficient legal cause as to justify her withdrawal and still permit her to share in her husband's estate. *Hahn v. Bealor,* 132 Pa. 242, 256, 19 A. 74; *Hayes's Est.,* 23 Pa. Superior Ct. 570. It was not such a cause as would entitle her to a divorce. *Laterza v. Laterza,* 124 Pa. Superior Ct. 103, 109, 188 A. 89; *Secor v. Secor,* 126 Pa. Superior Ct. 561, 562, 191 A. 647; *Bates v. Bates,* 153 Pa. Superior Ct. 133, 33 A. 2d 281. Nor could it be said that the leaving was consensual. Appellant gave her husband no alternative. His principal means of support and maintenance of the home were the contributions made by his son Fred, and in his crippled condition he could not by his own efforts support himself and his wife. In reality he had no choice, but still he told her that he did not want her to leave. It was not necessary for appellant to leave and join her 18 year old son as they had been separated before and he was capable of supporting himself.

The fact that appellant returned between 1938 and 1941 to do housework does not raise any inference of cohabitation since marital relations were not resumed. *Doemling v. Doemling,* 118 Pa. Superior Ct. 426, 430, 179 A. 813. Her performance of household duties did not change the character of her original desertion as

there was nothing to indicate an intention of returning to the home in her status as his wife.

The learned chancellor, President Judge GIBSON, succinctly stated the conviction which we too have formed after a careful review of the whole record: "Really, there is little conflict in the testimony and all of it clearly shows that the plaintiff withdrew from the Fellabaum home and from all marital relations with Harry H. Fellabaum because she wanted to make a home for her son at another place and for no other reason. Her excuses are too trifling for serious consideration."

In the court below appellees contended that appellant was not competent to testify as to facts and circumstances which occurred during decedent's lifetime. The objection was based upon the Act of May 23, 1887, P. L. 158, §5e, 28 PS §322, and *Patton v. Patton,* 351 Pa. 6, 39 A. 2d 921. In his adjudication the chancellor said: "If we follow, as we think we should, that decision, [Patton v. Patton, supra] the testimony of Maude Fellabaum, the plaintiff, is incompetent." However, he declined to apply "this strict rule" and received and considered her testimony. Here, appellees urged us to ignore her testimony, and to hold that with her testimony "stricken from the record, there is no evidence to support her claim in this case." Her testimony was clearly competent under the Act of April 24, 1931, P. L. 46, 28 PS §329. This Act was repealed by the new Intestate Act of April 24, 1947, P. L. 80, §6, 20 PS §1.16, but its provisions were substantially reënacted by §6(b) and (d), 20 PS §1.6. Accordingly, we considered appellant's testimony in the decision of this appeal.

Affirmed at appellees' costs.