Archer Estate.

Argued November 16, 1949. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Samuel Gordon,* with him *Leonard B. Gordon,* for appellant.

*John P. Byrne, Jr.,* for appellee.

OPINION BY MR. JUSTICE DREW, January 16, 1950:

Alexander T. Archer, Jr., died intestate in the City of Philadelphia on July 21, 1945. At the audit of his estate, the learned auditing judge found the testimony of Winifred Archer his widow, to be incredible and dismissed her claim to a surviving widow's share on the ground that she had separated from her husband by mutual consent and when she subsequently committed adultery she was guilty of wilful desertion, thereby forfeiting her rights under the terms of Section 6 of the Intestate Act of June 7, 1917, P. L. 429.[1] Exceptions taken by the widow were dismissed by the court en banc and a final decree affirming the adjudication was entered. From that decree the widow now appeals.

Archer married Winifred J. Walsh, appellant, on March 1, 1920. She was then 19 years of age and he 27. They rented a small furnished apartment in Akron and lived there for five months. At the end of that time they separated and never again met. No divorce was ever obtained. Sometime between 1925 and 1928, Archer entered into a meretricious relationship with one Helen E. O'Brien in Philadelphia and remained with her until his death in 1945. In 1929 appellant, who resided in Buffalo, began living with another man, a child being born to them on July 29, 1930. At the date of the hearing she was still living with that man and representing herself to be his wife.

---

[1] Section 6 provides: "No wife who shall have, for one year or upwards previous to the death of her husband, wilfully and maliciously deserted her husband, shall have the right to claim any title or interest in his real or personal estate after his decease, under the provisions of this act."

Appellant's testimony, which the auditing judge disbelieved, was that both she and Archer worked for Goodyear Tire & Rubber Co., she in the office and he in the factory, and that two days after the marriage he told her to get a factory job so that they could make more money. She further testified that she did get a factory job but that he still was not satisfied and that during the five months that she lived with him, he suggested eight or ten times that they could make money "easy" and "fast" by moving to Detroit, which was then a boom town, and renting an apartment where he would bring men to her for immoral purposes. She stated that upon her continued refusal to accede to that request, Archer gave her $65.00 and told her to get out and that she then returned to her mother's home in Buffalo.

Appellant first contends that the burden was on those contesting her claim to show that she had deserted Archer and that they failed to carry that burden. However, when they established her withdrawal from the common home, they satisfied that burden and it was then her duty to show that her leaving was not a wilful and malicious desertion: *Heath Estate*, 156 Pa. Superior Ct. 597, 600, 41 A. 2d 353.

The sole evidence appellant offered to justify her conduct was her own testimony. That testimony was rejected by the auditing judge as incredible. Appellant argues that since her testimony was uncontradicted, it may not be disbelieved by the auditing judge and that his disbelief of it was, therefore, capricious. That argument is wholly without foundation in the law. There is nothing which compels the fact finding body, whether it be judge or jury, to accept as verity uncontradicted testimony. Credibility of witnesses is always for the finders of fact: *Nanty-Glo Boro. v. Amer. Surety Co.*, 309 Pa. 236, 163 A. 523. The disbelief of witnesses by a chancellor or, as here, an auditing judge which is approved by the court en banc, is conclusive on the appel-

late courts in the absence of proof of bias, prejudice, prejudgment, or capricious disbelief: *Roberts Estate*, 350 Pa. 467, 39 A. 2d 592; *Osterling's Estate*, 323 Pa. 23, 185 A. 790; *Pusey's Estate*, 321 Pa. 248, 184 A. 844. As this Court stated, through Chief Justice KEPHART, in *Pusey's Estate*, supra, at 262: "Appellants must sustain the charge [of capricious disbelief] *not by inference or innuendo, but sufficient facts must appear of record to show that there has been an abuse of power*. If it appears from the record that a trial judge, by his conduct, has prejudged the case or has shown bias, prejudice or a capricious disbelief in his disposition of the case, this court will not hesitate to set aside a decree based on such illegal considerations, but as these constitute the most serious charges that can be hurled against a judge *the record must clearly show* prejudice, bias, capricious disbelief or prejudgment." (Italics added).

There is certainly nothing in this record which clearly shows, or even indicates, that the auditing judge's disbelief of appellant was capricious. In fact, aside from her testimony the record shows nothing more than a marriage, separation, and subsequent misconduct by both spouses. Obviously, there is nothing in that to impeach the findings of the auditing judge. On the other hand, her story on its face is improbable. The judge who heard the testimony was in a position to study appellant's manner and appearance on the witness stand and in the courtroom and to weigh that against the improbability of her story and its lack of corroborating evidence. Having done that he concluded that it was incredible. There being nothing to show that his conclusion was biased, prejudiced or capricious, this Court will not disturb it.

It is true as appellant contends, that there are cases holding that a wife's uncontradicted testimony of her husband's mistreatment is corroborated by the fact that she left his home. However, those are all divorce cases

where the husband was present at the trial and could have contradicted her testimony but chose instead to remain silent. In those circumstances, his silence lends credibility to her statements. That rule has no application to these facts. To adopt that rule where the husband is dead and cannot deny her statements would open the door wide to fraudulent claims against estates.

Appellant's final position is that even if the separation were by consent, Archer's subsequent adultery converted that separation into a desertion and she is, therefore, entitled to share in his estate; in support of that position she cites *Bowman's Estate,* 301 Pa. 337, 152 A. 38; *Lodge's Estate,* 287 Pa. 184, 134 A. 472; and *In Re: Estate of John Balog Fenyo,* 105 Pa. Superior Ct. 560, 161 A. 606. Those cases have no application where, as here, both parties were equally unfaithful. Nor is there any consolation in *Jac Estate,* 355 Pa. 137, 49 A. 2d 360; *Heslop v. Heslop,* 82 Pa. 537; or *Reel v. Elder,* 62 Pa. 308, which hold that where a husband deserts his wife her subsequent misconduct will not bar her from sharing in his estate. Those are all cases where the desertion occurred at the time of separation. Where such is the case there is a sound public policy to protect the widow because "His own crime of unfaithfulness to his marriage vows exposed her to seduction, and that she fell was as much his fault as hers.": *Reel v. Elder,* supra, at 317. Here the separation was found to be by mutual consent and it cannot be said that her misconduct was in any way caused by his acts. On the contrary, the record makes it clear that she had no knowledge or reason to know that he was at any time unfaithful to his marriage vows. In this situation the sound rule is the one laid down in the opinion of the learned court en banc that "where there had been a separation by mutual consent and thereafter both spouses enter into adulterous relationships with paramours, neither spouse may

share in the other's estate, irrespective of who was the first to transgress."

The separation having been found to be a consensual one and her adultery being admitted, the court below properly held that appellant has forfeited her right to share in Archer's estate.

Decree affirmed; costs to be paid by the estate.