## Crater Estate.

Argued November 12, 1952. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*William F. Quinlan*, for appellant.

*Michael C. McManus*, for appellee.

OPINION BY MR. JUSTICE JONES, January 5, 1953:

James J. Crater died intestate on September 3, 1949, leaving to survive him a wife and eight first cousins but no issue. As the value of the net estate for distribution was less than $10,000, the wife claimed the whole of it by virtue of Section 2 (3) of the Intestate Act of April 24, 1947, P. L. 80, 20 PS §1.2 (3). The learned auditing judge rejected the wife's claim in its entirety on the ground that, for upwards of a year previous to her husband's death, she had wilfully and maliciously deserted him and had thereby forfeited all interest in his estate: see Section 6 (b) of the Act of 1947, supra, 20 PS §1.6 (b). During the course of the audit, the wife died. Her executor was substituted of record for her and thereafter filed exceptions to the decree nisi which the auditing judge entered awarding the fund for distribution (after transfer inheritance taxes) to the eight cousins. The court en banc dismissed the exceptions and confirmed the adjudication.

From the final decree entered, the wife's executor has appealed.

The sole issue involved was whether the wife was guilty of wilful and malicious desertion. The evidence adduced at the hearing was meager and much of it of no probative value. However, from the findings of the auditing judge, which the court en banc confirmed, and from undisputed testimony, the following is a summary of the material facts. The decedent and his wife were married in 1915 and lived together until 1918 or 1919 when the husband left the marital domicile and never returned to it. He did not, however, leave the community but continued to dwell in the neighborhood where he peddled ice. After the husband's departure, two sisters of the wife moved in with her where all three of them lived until 1923. From 1923 until 1929, the wife's whereabouts were unknown to Crater or even to her brothers. What became of the sisters does not appear. During the four or five years that the wife had lived separately from, but in close proximity to, her husband, she made no effort to obtain an order of support against him. Some time prior to 1929, she began living with one Robert Reardon, as his wife, and continued so to do down to the date of her death in 1951; it is Reardon who is the executor of her will and the present appellant. In 1929, she and Reardon purchased a property in Chester County to which they took title as husband and wife. They lived in that property for seventeen years and, upon selling it in August 1946, contemporaneously acquired, as tenants by the entireties, another property in Chester County where they lived together until the wife's death.

The burden of proof was upon the heirs to establish their allegation that the wife was guilty of wilful and malicious desertion: *Estate of Mehaffey,* 102 Pa. Superior Ct. 228, 234; *Schreckengost's Estate,* 77

Pa. Superior Ct. 235, 237. But, upon proof of the wife's adultery during the separation, the inference justifiably arose that her open disregard of her marital obligations was intentional and, as a consequence, a wilful and malicious desertion by her. "If, after separation, the wife commits adultery, the separation from that time on becomes desertion within the meaning of the act [of June 7, 1917, P. L. 429]. It deprives her of all interest in the estate": *Bowman's Estate,* 301 Pa. 337, 340, 152 A. 38. See also *Lodge's Estate,* 287 Pa. 184, 187-188, 134 A. 472. In that situation, the burden of going forward with evidence to prove that the separation was originally the fault of the husband shifted to the wife. Her subsequent adultery would not operate to bar her claim against his estate if the husband was in fact the one responsible for the separation. "Where such is the case there is a sound public policy to protect the widow because 'His own crime of unfaithfulness to his marriage vows exposed her to seduction, and that she fell was as much his fault as hers.': Reel v. Elder, [62 Pa. 308], at 317": *Archer Estate,* 363 Pa. 534, 538, 70 A. 2d 857.

The proofs adduced by the wife, or her representative, failed to meet her burden. In a case such as this, there is no presumption from the mere fact of the separation that the withdrawing spouse left the common abode without reasonable cause: *Lodge's Estate,* supra, at p. 187. The burden is upon the one claiming such want of reasonable cause to prove facts tending to support the allegation. The cases cited by the appellant as to a departing spouse's burden of proving reasonable cause for his withdrawal from the common residence (e.g., *Ingersoll v. Ingersoll,* 49 Pa. 249; *Irwin v. Irwin,* 131 Pa. Superior Ct. 321) were actions for divorce where the parties to the marriage were the living litigants with an opportunity to rebut adverse in-

ferences otherwise possibly arising from silence. The inapplicability to a case such as this of the rule as to the corroboratory effect of a spouse's failure to deny the other's testimony at the trial of their divorce case, where both appear or can appear, was well stated by Mr. Justice DREW for this court in *Archer Estate,* supra, at p. 538, where he said,—"that rule [that a husband's silence at a divorce trial lends credibility to his wife's statements] has no application to these facts [relative to a widow's claim against the estate of her husband from whom she was separated]. To adopt that rule where the husband is dead and cannot deny her statements would open the door wide to fraudulent claims against estates." Moreover, the character of proofs required to establish a decedent's fault for a separation from the claimant-spouse is substantial. In *Estate of Mehaffey,* supra, the Superior Court said at p. 232,—"But the 'fault,' in order to furnish justification for the separation, must be a serious one—deserting, maltreating or abusing her, driving her away, or inducing her to leave the home, and the like: Stauffer's Estate, [89 Pa. Superior Ct. 531]."

There is not a word of credible testimony in the instant case from which it could be found that the separation was the husband's fault. So far as the record discloses, it could as well have been the wife's treatment of her husband that caused him to leave. The claimant made but a slight effort at the hearing to insinuate through vague and indefinite testimony of one witness that the husband might have had an improper interest in another woman while he and his wife were living together. That testimony was so utterly lacking in probative force or credibility as not to merit serious consideration. On the other hand, the record affords a reasonable inference that the husband did not wilfully and maliciously desert his wife. She never

sought an order of support against him and, apparently, not a divorce. Crater's place of residence was at all times known to her or readily ascertainable by her. One of her brothers had no difficulty locating him years after the separation; and the testimony taken at the hearing established his continuous places of residence in the locale of his abode with his wife at the time of the separation. Is it likely that she would have lived for at least twenty-one years in open adultery with Reardon if she had just cause for divorce from her husband? Would she not have acted, if she could, to regularize by marriage her continuing illicit relation with her constant paramour?

The most favorable finding for the wife that can be made is that the separation was consensual. And, as already stated, where a separation has its inception in mutual consent of the parties, it becomes a wilful and malicious desertion on the part of the spouse who thereafter is guilty of conduct violative of the marriage vows: see *Bowman's Estate,* supra; and *Lodge's Estate,* supra. Accordingly, the learned court below was correct in concluding on the basis of the findings that the wife was guilty of wilful and malicious desertion and that she thereby forfeited her right to claim, under the intestate law, against her husband's estate.

Decree affirmed at the appellant's costs.