Hudak Estate.

Argued October 6, 1955. Before STERN, C. J., STEARNE, JONES, MUSMANNO and ARNOLD, JJ.

*Louis H. Artuso,* with him *John M. Walker,* and *G. Harold Watkins,* for appellant.

*Solis Horwitz,* with him *Daniel Krause,* and *Boreman, Parker, Krause & Horwitz,* for appellees.

OPINION PER CURIAM, November 28, 1955:

The decree of the court below is affirmed on the opinion of Judge RAHAUSER. Costs to be paid by appellant.

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

At the age of 17, Michael Hudak entered the coal mines in Pottsville, Pennsylvania, and since then has known scarcely any occupation other than that of toiling in the subterranean depths of the earth, extracting the "black diamonds" which America for many decades has worn in the diadem of her economic wealth. In 1939, 28 years after descending for the first time into the deep caverns, Hudak encountered the fate which hangs like a black cloud over every coal miner's destiny. Since then he has been permanently disabled.

On November 30, 1952, his wife died, entitling him, under the intestate laws to the major portion of her estate. The Orphans Court of Allegheny County has decreed that he shall not participate in the estate and has awarded all of it to collateral heirs, citing as authority Sec. 6 (a) of the Intestate Act of 1947 (20 P.S. Sec. 1.6) which reads: "Forfeiture. (a) Husband's share. A husband who, for one year or upwards, previous to the death of his wife, shall have wilfully neglected or refused to provide for her, or who for that period or upwards shall have wilfully and maliciously deserted her, shall have no title or interest under this act in her real or personal estate."

The majority of this Court has affirmed the decision of the lower Court and has adopted its opinion disposing of the case. I have a high regard for the writer of that opinion and regret that I must disagree with his view that one who is totally and permanently disabled can be regarded as having *"wilfully* neglected or refused to provide" * for his wife. Nor can I agree that whatever Michael Hudak did prior to 1943 shall be accepted as *conclusive* proof of his intentions in 1951, a year prior to his spouse's death. To project into the

---

* All italics mine.

future a wilful intent which Father Time has already shovelled into the grave of the past is to formulate a species of ex post factoism in reverse. Moreover, there is evidence that the separation between husband and wife was a consensual one.

The case of *Buckley Estate,* 348 Pa. 311, cited by my learned friend in the Court below, is scarcely applicable to the facts in the case at bar. As Justice ALLEN M. STEARNE pointed out, Buckley was a "persistent criminal" and "at the time of the audit he was still serving from 2 1/2 years to 5 years in prison following his most recent sentence, on February 8, 1940, on the charge of burglary." It is obvious that in excluding Buckley from his wife's estate, this Court was guided by the fact that Buckley's failure to support his wife was an act of volition on his part since it followed upon his conviction for a crime which he voluntarily committed. Thus, Justice STEARNE said: "While the incarceration of the husband for a year and upwards might not *of itself* establish either wilful desertion or non-support, yet in the facts of this case the persistent course of criminal conduct and the various imprisonments since 1926, in this and another state, raise a presumption that during such period, and particularly since 1940, the husband failed to support his wife."

No such presumption should arise in the circumstances of the case at bar, because Hudak's injuries (and consequent inability to support his wife) were the result of an accident over which he had no control.

Michael Hudak is not a criminal. Apart from disagreements with his wife and quarrels with his in-laws, his life, so far as the record shows, has been that of a law-abiding citizen and a humble worker, hoping through the years to find amid the dust of the mines one

shiny pebble of good luck. He never found it, and the decision in this case would appear to have thrust that possibility over the precipice of impossible performance into the abyss of the nevermore.