## Fisher Estate.

Argued January 14, 1971. Before BELL, C. J., JONES, EAGEN, O'BRIEN, ROBERTS, POMEROY and BARBIERI, JJ.

*Jay R. Braderman,* for appellant.

*James B. Pannebaker,* with him *Jon A. Yost, Christian S. Erb* and *Pannebaker & Andrews,* and *Metzger, Wickersham, Knauss & Erb,* for appellees.

OPINION BY MR. JUSTICE JONES, April 22, 1971:

Decedent, a Dauphin County resident, died intestate on March 26, 1968, and the Harrisburg National Bank and Trust Company was appointed administrator of his estate. In its petition for distribution accompanying its first and final account, the administrator proposed distributing the entire estate to decedent's only child in derogation of the rights of his surviving spouse, who claimed her intestate share under Section 2(2) of the Intestate Act of 1947 (Act of April 24, 1947, P. L. 80, §2(2), 20 P.S. §1.2(2)). After the surviving spouse (appellant) filed objections to this petition, a hearing and oral argument were held before the Orphans' Court Division of the Dauphin County Court of Common

Pleas. Subsequent thereto, the court below overruled these objections, concluding appellant had forfeited her intestate share under Section 6(b) of the Intestate Act (Act of April 24, 1947, P. L. 80, §6(b), 20 P.S. §1.6 (b)). This appeal followed.

Appellant married decedent on December 28, 1963, and took up residence at decedent's home along with decedent's sixteen-year-old daughter by a previous marriage. However, appellant and her stepchild were soon at odds. This bitterness culminated when appellant announced on March 21, 1964, less than three months after the marriage, that she was leaving. Although appellant returned but once to remove her furniture, appellant and decedent dated intermittently. While it is disputed whether decedent ever asked appellant to return, appellant advised decedent she would not return until the stepchild departed.

During the course of these stepmother-stepchild arguments, appellant testified that decedent always sided with his child. On the other hand, another witness testified that decedent disciplined his child by sending her to her room after these arguments and, on at least one occasion, "grabbed her and shook her and sent her up to her bedroom."

Appellant later instituted an action for nonsupport against decedent and the Court of Quarter Sessions entered a consensual support order of $10.00 per week for appellant. Thereafter, decedent filed a complaint in divorce on the grounds of indignities. However, nothing further transpired between the parties.

In this area of the law we begin with the recognition that: "At common law no degree of misconduct by the surviving spouse resulted in a forfeiture of his or her rights in the estate of the deceased spouse. Forfeiture is based in statutes." *Hudak Estate*, 383 Pa. 278, 280, 118 A. 2d 577, 579 (1955). *See, generally,* Annot., 13 A.L.R. 3d 446 (1967). The concept of a

wife's forfeiture is presently embodied in Section 6(b) of the Intestate Act of 1947: "Wife's share. A wife who, for one year or upwards previous to the death of her husband, shall have wilfully and maliciously deserted him, shall have no title or interest under this act in his real or personal estate."[1]

As a general statement of the law, we have reiterated on several occasions that the burden of proving a forfeiture rests upon the heirs. *See, e.g., Crater Estate,* 372 Pa. 458, 460, 93 A. 2d 475, 477 (1953). In this same vein we also note that forfeitures are not favored in the law and are to be strictly construed. *See, e.g., Zanfino Estate,* 375 Pa. 501, 503, 100 A. 2d 60, 61 (1953). Nonetheless, a presumption has developed in this Commonwealth that a spouse's desertion, without cause or consent, will be presumed to be wilful and malicious within the meaning of Section 6(b). *See, Watt Estate,* 409 Pa. 44, 59, 185 A. 2d 781, 788 (1962); *Jac Estute,* 355 Pa. 137, 142, 49 A. 2d 360, 363 (1946); *Lodge's Estate,* 287 Pa. 184, 186-87, 134 Atl. 472, 473 (1926); *Phillip's Estate,* 271 Pa. 129, 132, 114 Atl. 375, 376 (1921); *Weller v. Weller,* 213 Pa. 265, 268, 62 Atl. 859, 860 (1906); *Fellabaum v. Alvarez,* 165 Pa. Superior Ct. 173, 177, 67 A. 2d 788, 790 (1949). *See, also, Buckley Estate,* 348 Pa. 311, 35 A. 2d 69 (1944). Accordingly, if the heir(s) prove a desertion, without cause or consent, the burden shifts to the spouse to establish the desertion was not wilful and malicious in order to obtain her intestate share.

---

[1] This provision mirrors Section 6 of the Intestate Act of 1917, Act of June 7, 1917, P. L. 429, §6. Accordingly we deem the case law interpreting that section to be fully applicable to cases arising under Section 6(b) of the Intestate Act of 1947. In this same manner, we deem those cases arising under Section 9(b) of the Wills Act of 1947, Act of April 24, 1947, P. L. 89, §9(b), 20 P.S. §180.9(b), relating to the wife's forfeiture of her right of election to be fully applicable since the provisions are identical.

Our attention has been directed, initially, to a statement in *Archer Estate,* 363 Pa. 534, 536, 70 A. 2d 857, 859 (1950), indicating the burden shifts to the wife once the heir(s) establish her separation or withdrawal. *See, also, Heath Estate,* 156 Pa. Superior Ct. 597, 600, 41 A. 2d 353, 354 (1945). Read literally, this statement is technically incorrect since mere withdrawal or separation does not always constitute desertion. *See, e.g., Lodge's Estate,* 287 Pa. at 186-87, 134 Atl. at 473; *Fellabaum v. Alvarez,* 165 Pa. Superior Ct. at 177, 67 A. 2d at 790. Reviewing the opinion of the court below, we sense the *possibility* that the court below erroneously relied on this loose language of *Archer Estate.* Even if the court below erred in so doing, it would not be reversible error if there is sufficient evidence of desertion without cause or consent. Whether such is the case can best be determined by reference to appellant's three main contentions insofar as appellant argues: (1) she did not intend to desert; (2) the separation was consensual; and (3) even if she deserted decedent she had reasonable cause.

Appellant first contends that her departure did not evidence an intent to *permanently* leave decedent. In order to buttress this contention, appellant testified to the effect that she offered to return if and when the stepchild departed. However, in light of appellant's removal of her furniture and her failure to return at any time, we are led to the obvious conclusion that appellant intentionally deserted decedent. Additionally, we cannot characterize the proviso to her offer to return as a reasonable condition in view of the fact that her stepchild was only sixteen years old when appellant departed. *Cf. Cantwell v. Cantwell,* 179 Pa. Superior Ct. 452, 115 A. 2d 801 (1955). Indeed, this point was not strenuously argued before this Court or in appellant's brief. This lack of emphasis reflects the rule that, "[i]ntent is presumed when either party with-

draws from the residence of the other without cause or consent: [citations omitted]." *Lodge's Estate,* 287 Pa. at 187, 134 Atl. at 473.

We next consider whether decedent consented to appellant's desertion in light of several facts: (1) appellant and decedent continued to date; (2) decedent meekly nodded his head after appellant announced she was leaving; and (3) decedent's divorce action was grounded upon indignities and not desertion. Although appellant and decedent continued to date and although decedent meekly nodded his head when appellant announced her departure, these facts are nullified by the stepchild's testimony, contradicting appellant, that decedent frequently asked appellant to return and was rebuffed. Moreover, decedent eventually stopped seeing appellant when he learned she was dating other men. Nor will we consider the basis for the divorce action to be controlling. For these reasons we share the opinion of the court below that appellant's desertion was nonconsensual.

Lastly, and most importantly, we question whether the appellant had a sufficient legal cause to desert. Several principles are well established in this area: (1) If the spouse's withdrawal from the common domicile is justified, it is neither wilful nor malicious, *Wagner Estate,* 398 Pa. 531, 540, 159 A. 2d 495, 500 (1960); *Jac Estate,* 355 Pa. at 142-43, 49 A. 2d at 363; (2) "There is no presumption from the mere fact of the separation that the withdrawing spouse left the common abode without reasonable cause: [Citation omitted]," *Crater Estate,* 372 Pa. at 461, 93 A. 2d at 477; (3) "Such justification would have to be found in a cause sufficient to entitle her to obtain a divorce: [Citations omitted]," *Jac Estate,* 355 Pa. at 143, 49 A. 2d at 363. Appellant seeks to establish such justification by pleading indignities as a reasonable cause for her withdrawal. "To warrant a degree of divorce on the ground

of indignities, there must be clear and satisfactory proof of a course of conduct which rendered the condition of the other party intolerable and life burdensome, and from which an inference of settled hate and estrangement may be deduced: [Citation omitted]." *Nichols v. Nichols*, 207 Pa. Superior Ct. 220, 222-23, 217 A. 2d 807, 809 (1966). It is clear from the record that appellant's complaint is essentially directed toward the stepchild and not the decedent.[2]  Whereas appellant's testimony concerning her husband is contradictory another witness' unequivocal testimony characterized the decedent as a good husband. His only fault seems to be that he did not take stronger steps to discipline his child. The only appellate decision that can be termed analogous presented the additional fact of an adult son encouraged by his mother to argue with his father. *Cantwell v. Cantwell*, 179 Pa. Superior Ct. 452, 115 A. 2d 801 (1955). In the case at bar, decedent disciplined the child, physically shook the child and advised appellant to similarly discipline the child. On these facts, appellant was not entitled to a divorce on the grounds of indignities to the person.

Overall, we conclude that appellant deserted decedent without cause or consent and failed to sustain her burden of proving the desertion was not wilful or malicious. For these reasons appellant has forfeited her intestate share in decedent's estate.

Decree affirmed. Costs on appellant.

---

[2] Appellant also mentions additional conduct by decedent allegedly sufficient to entitle her to a divorce on the ground of indignities. Like the court below, "[w]e are satisfied that the slights complained of by Mrs. Fisher were so completely subjective that they cannot be fairly tested by us, or that they were largely existent only in her imagination or that they were so slight that their existence, even though established, could not fairly or properly be taken as amounting to a course of conduct on Mr. Fisher's part amounting to indignities so as to make her condition intolerable or life burdensome."