J-S09002-16

2016 PA Super 66

| IN RE: ESTATE OF KATHLEEN TALERICO | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: DONALD P. TALERICO | No. 728 MDA 2015 |

Appeal from the Order March 24, 2015
In the Court of Common Pleas of Lackawanna County
Orphans' Court at No(s): 35-14-93

BEFORE: PANELLA, J., LAZARUS, J., and JENKINS, J.

OPINION BY PANELLA, J.                    **FILED MARCH 18, 2016**

Appellant, Donald P. Talerico, appeals from the order entered March 24, 2015, in the Court of Common Pleas of Lackawanna County, which denied Talerico's petition to strike the claim of Karen Cavanaugh to the Estate of Kathleen Talerico (Decedent). Talerico argues that the trial court improperly applied 20 Pa.C.S.A. § 2106, Forfeiture, in determining that his separation from the decedent and subsequent extra-marital affairs had deprived him of his spousal rights under the probate code. After reviewing the relevant case law, we conclude that the trial court committed no error and affirm.

We take the history of this case from the Orphans' Court's opinion.

> Decedent Kathleen Talerico (Decedent) and [Appellant] Donald P. Talerico (Talerico) were married on March 17, 2006. The couple resided at 946 Orchard Street in Scranton, the title to

which property was solely in the name of Decedent. There was a mortgage on the property which listed Decedent and her mother, Marion Cavanaugh, as mortgagors. On or about December 20, 2010, Talerico moved out of the residence because of a number of issues the couple were experiencing. In May, 2011, Decedent initiated divorce proceedings in Lackawanna County…. At that point, Talerico was living with his mother. Sometime in June, 2011, Talerico moved into an apartment on Cedar Avenue in Scranton with two other men. Talerico testified that between the commencement of the divorce proceedings and the death of the Decedent on January 3, 2014, both he and the Decedent engaged in multiple extramarital affairs, specifically, Talerico engaged in three separate and distinct relationships, each one of which included sexual intercourse. Additionally, Talerico also testified that while he was living on Cedar Avenue after the commencement of the divorce proceedings, he had sexual relations with the Decedent at least once and at least twice at a subsequent address of his on Orchard Street in Scranton. Talerico further testified that he was personally aware that the Decedent had sexual relations with other men after the filing of the divorce proceedings when he found her in bed with another man one day in what had been their marital residence.

Talerico testified that his relationship with the Decedent, including their marriage, was a tumultuous one. He testified that the Decedent had been diagnosed with bipolar disorder and frequently failed to take her prescribed medications. He further testified that the Decedent abused alcohol regularly. Despite this, Talerico testified, he and the Decedent maintained a friendship and he "helped her" whenever she asked for items such as lawn maintenance, snow removal and things of that sort. When the Decedent was in an abusive relationship with another individual, Talerico indicated that he had taken her to the emergency room on several occasions because of injuries she sustained. Talerico also testified that, after the filing of the divorce proceedings, he continued to help the Decedent financially and helped to take care of the Decedent's ailing mother. Evidence was produced that Talerico was named as an alternate trustee in the Will of the Decedent's mother, which was executed on January 26, 2012. Talerico offered this evidence for the purpose of showing that, despite the filing of a divorce and despite the separation between himself and the Decedent, they maintained a friendship and he helped and supported her at all times subsequent to their separation on December 20, 2010.

Notwithstanding this, it is uncontroverted that Talerico engaged in multiple extramarital affairs after the commencement of the divorce proceedings on May 19, 2011. It is also undisputed that the divorce action initiated by Decedent was never finalized before her death. Initial pleadings were filed but no further action took place.

…

Talerico filed a Petition for Grant of Letters of Administration on January 29, 2014 and Letters of Administration were granted to him the same day. A Notice of Claim against the estate of Kathleen Talerico was filed by her sister, Karen Cavanaugh, on April 24, 2014. Talerico filed a Petition to Dismiss Cavanaugh's claim on December 29, 2014 and an Answer to the Petition was filed on January 13, 2015. Talerico seeks to dismiss Cavanaugh's claim arguing that he and the Decedent were married at the time of the Decedent's death since the requisite grounds for a divorce had not been established at the time of her death. Respondent Cavanaugh maintains that Talerico forfeited his claim as surviving spouse pursuant to 20 Pa.C.S.A. § 2106(a) because of his post-separation and post-divorce commencement conduct.

Respondent Cavanaugh maintains that Talerico's admitted extramarital affairs constitute a forfeiture of any right he has to an intestate share of the Decedent's estate. In essence, the question is whether Talerico should share in the estate of his deceased wife in light of their separation, the commencement of divorce proceedings and his subsequent extramarital conduct.

Orphans' Court Opinion, 3/24/15 at 1-4.

The Orphans' Court conducted a hearing on Talerico's petition to strike the claim filed by the Decedent's sister. On March 24, 2015, the court issued an opinion and order denying Talerico's petition. This timely appeal followed.

Talerico raises the following issue for our review.

Did the trial court err and/or abuse its discretion in concluding that willful and malicious desertion was satisfied solely by extra-marital affairs engaged in, during a separation, by both the Decedent and Appellant, where Appellant physically separated from the Decedent for just cause and where all other undisputed

evidence established the absence of willful and malicious desertion on his part?

Appellant's Brief at 3.

Our standard when reviewing an Orphans' Court's findings is deferential.

> The findings of a judge of the orphans' court division, sitting without a jury, must be accorded the same weight and effect as the verdict of a jury, and will not be reversed by an appellate court in the absence of an abuse of discretion or a lack of evidentiary support. This rule is particularly applicable to findings of fact which are predicated upon the credibility of the witnesses, whom the judge has had the opportunity to hear and observe, and upon the weight given to their testimony. In reviewing the Orphans' Court's findings, our task is to ensure that the record is free from legal error and to determine if the Orphans' Court's findings are supported by competent and adequate evidence and are not predicated upon capricious disbelief of competent and credible evidence.
>
> When the [Orphans'] Court has come to a conclusion through the exercise of its discretion, the party complaining on appeal has a heavy burden. It is not sufficient to persuade the appellate court that it might have reached a different conclusion if, in the first place, charged with the duty imposed on the court below; it is necessary to go further and show an abuse of the discretionary power. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record, discretion is abused. A conclusion or judgment constitutes an abuse of discretion if it is so lacking in support as to be clearly erroneous.... If the lack of evidentiary support is apparent, reviewing tribunals have the power to draw their own inferences and make their own deductions from facts and conclusions of law. Nevertheless, we will not lightly find reversible error and will reverse an orphans' court decree only if the orphans' court applied an incorrect rule of law or reached its decision on the basis of factual conclusions unsupported by the record.

*In re Jerome Markowitz Trust*, 71 A.3d 289, 297-298 (Pa. Super. 2013) (citation omitted; brackets in original).

"When the Orphans' Court arrives at a legal conclusion based on statutory interpretation, our standard of review is de novo and our scope of review is plenary." *In re Estate of Fuller*, 87 A.3d 330, 333 (Pa. Super. 2014) (citation omitted).

"The death of a spouse during the pendency of a divorce proceeding abates the divorce action and any and all claims for equitable distribution." *In re Estate of Cochran*, 738 A.2d 1029, 1031 (Pa. Super. 1999) (citation omitted). "However, the Probate, Estates and Fiduciaries Code (the 'Probate Code') contains substantial provisions designed to insure the fair distribution of the marital estate upon the death of one spouse." *Id*. (citation and some internal quotation marks omitted). The relevant section of the Probate Code provides as follows.

> § 2106. **Forfeiture**
>
> **Spouses share**.—A spouse who, for one year or upwards previous to the death of the other spouse, has willfully neglected or refused to perform the duty to support the other spouse, or who for one year or upwards has willfully and maliciously deserted the other spouse, shall have no right or interest under this chapter in the real or personal estate of the other spouse.

20 Pa.C.S.A. § 2106(a).

The Pennsylvania Supreme Court has recognized that

> the mere fact of separation does not create a presumption of willful and malicious desertion. *In re Estate of Kostick*, 514 Pa. 591, 594, 526 A.2d 746,748 (1987). *See also Lodge's Estate*, 287 Pa. 184, 186, 134 A. 472, 473 (1926) ("Mere separation is

not desertion, there must be an actual abandonment of matrimonial cohabitation with intent to desert, willful and persisted in without cause."). Thus, where an allegation of desertion is based on separation, the party advocating forfeiture must prove there was a desertion without cause or consent of the other spouse. *In re Estate of Fisher*, 442 Pa. 421, 424, 276 A.2d 516, 519 (1971). However, once such a showing has been made, the parties' separation is presumed a willful and malicious desertion and the burden shifts to the surviving spouse to prove the contrary. *Id.*

*In re Estate of Cochran*, 738 A.2d at 1031 (some internal quotation marks omitted).

Talerico contends on appeal that he separated from the Decedent either with just cause or with the Decedent's consent, such that desertion was not proven. Talerico further maintains that if the presumption of desertion on his part existed, it was neither willful or malicious in that his extramarital sexual relationships allegedly did not occur until *after* Decedent had engaged in the same. Talerico's arguments are unavailing.

We find the facts presented in *In re Archer's Estate*, 70 A.2d 857 (Pa. 1950), to be similar to this case. There, the appellant, Winifred Walsh, and the decedent, Alexander Archer, Jr., separated shortly after they married. Although no divorce was obtained, both individuals engaged in extramarital relationships following their separation. When the decedent subsequently died intestate, appellant claimed a spousal interest in the decedent's estate. In affirming the lower court's decree dismissing appellant's claim, the Supreme Court recognized that "where there had been a separation by mutual consent and thereafter both spouses enter into

- 6 -

adulterous relationships with paramours, *neither spouse may share in the other's estate, irrespective of who was the first to transgress*." *Id*. at 860 (emphasis added).

Similarly, in *In re Crater's Estate*, 93 A.2d 475 (Pa. 1953), husband left the marital home shortly after his marriage to wife. After husband's departure, wife cohabitated with another man, whom she held out to be her husband.  Following husband's death, the lower court determined that wife had forfeited her claim against husband's estate. On appeal, the Supreme Court agreed, noting that "upon proof of [a spouse's] adultery during the separation, the inference justifiably arose that [the] open disregard of [that spouse's] marital obligations was intentional and, as a consequence, a wil[l]ful and malicious desertion…." *Id*. at 477.

Finding that Talerico had conceded that the parties' separation was consensual,[1] the Orphans' Court concluded that Talerico forfeited his right to

_____

[1] Talerico insists on appeal that *he* initiated the separation or that the Decedent willfully and maliciously deserted *him*. However, the record reveals that Talerico *conceded at trial* that the separation between the parties was consensual. ***See*** Defendant's Brief for Trial, 3/18/15 at 7 ("Donald Talerico and Kathleen Talerico separated by consent in December 2010."). This Court has long held that "[a] party cannot be permitted to question facts expressly admitted or deliberately waived at trial." ***Education Resource Institute, Inc. v. Cole***, 827 A.2d 493, 501 (Pa. Super. 2003) (citation omitted).

At any rate, although now Talerico contends that the Decedent's erratic behavior instigated his decision to leave the residence, the record reflects that the Decedent asked Talerico to leave the marital home and thereafter initiated the divorce proceedings. And there is no evidence of
*(Footnote Continued Next Page)*

share in the Decedent's estate due to his extramarital affairs during the separation. Based upon the rules announced in *In re Archer's Estate* and *In re Crater's Estate*, and in light of our deferential standard of review, we can find no abuse of discretion in the court's decision. Talerico's extramarital affairs gave rise to an inference of willful and malicious desertion that Talerico has failed to rebut. *See In re Crater's Estate* 93 A.2d at 478 ("[W]here a separation has its inception in mutual consent of the parties, it becomes a wil[l]ful and malicious desertion on the part of the spouse who thereafter is guilty of conduct violative of the marriage vows."). Although Talerico maintains that the Decedent first engaged in an extramarital affair, this fact is irrelevant to our analysis. *See In re Archer's Estate*.[2]

Although the instant case lies in a statutory forfeiture proceeding, our decision stands as an acknowledgment that the separation of spouses, although not finalized by divorce, should be given effect even following the death of a spouse. This principle is further buttressed by analogy to Section

*(Footnote Continued)* ───────────────

serious or continued attempts at reconciliation by either party. At the very least, the parties' tacit consent to the separation was clearly established.

[2] Although our adherence to precedent compels that we apply the Supreme Court's interpretation of Section 2106 in the context of the instant case, we echo the sentiment expressed by a prior panel of this Court: "[I]t remains for the legislature to study and decide whether scrutiny and revision of the Probate Act is necessary or desirable by reason of the mores of a society which inspired legislative enactment of no-fault divorce, when an individual may lawfully shed a marital partner, without the express consent of that partner and by reason of little more than the passage of time…." *Estate of Fulton*, 619 A.2d 280, 285 (Pa. Super. 1992).

6111.1 of the Probate Code. That section, entitled Modification by divorce or pending divorce, provides as follows.

> Any provision in a conveyance which was revocable by a conveyor at the time of the conveyor's death and which was to take effect at or after the conveyor's death in favor of or relating to the conveyor's spouse *shall become ineffective for all purposes* unless it appears in the governing instrument that the provision was intended to survive a divorce, *if the conveyor*:
>
> (1) Is divorced from such spouse after making the conveyance
>
> (2) *Dies domiciled in this Commonwealth during the pendency of divorce proceedings*, no decree of divorce has been entered pursuant to 23 Pa.C.S. § 3323 (relating to decree of court) and grounds have been established as provided as 23 Pa.C.S. § 3323(g).

20 Pa.C.S.A. § 6111.1 (emphasis added). Originally enacted in 1978, Section 6111.1 embodies a clear legislative intent that a spouse's death in no way invalidates a separation and pending divorce contemplated by the spouses prior to that death. Our decision today further effectuates the intent of the legislature in that regard.

Based on the foregoing, we affirm the order of the Orphans' Court dismissing Talerico's petition to strike the claim of Karen Cavanaugh to the Estate of Kathleen Talerico.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/18/2016