J-S23014-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: ESTATE OF BRUCE M. RACHT | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: FERN RACHT | No. 2609 EDA 2015 |

Appeal from the Order July 13, 2015
In the Court of Common Pleas of Monroe County
Orphans' Court at No(s): 194 O.C. 2014

BEFORE:  PANELLA, J., OTT, J., and FITZGERALD, J.[*]

MEMORANDUM BY PANELLA, J.                    **FILED MAY 17, 2016**

Appellant, Fern Racht, appeals from the order entered on July 13, 2015, in the Court of Common Pleas of Monroe County, which sustained the decision of the Register of Wills to revoke Letters of Administration to Racht and to re-issue Letters of Administration to Janet Foster, based upon a finding that Racht had forfeited her right to a spousal share of the decedent, Bruce M. Racht's estate pursuant to 20 Pa.C.S.A. § 2601(a)(1). We affirm.

The trial court summarized the pertinent history of this case as follows.

> The decedent and Fern Racht were married in or about 1987. The parties separated in or about April 2007. At the time of separation, the parties owned a home together in Jackson Township, Monroe County, Pennsylvania. For several years prior

---

[*] Former Justice specially assigned to the Superior Court.

to the separation, the parties were residing with Fern Racht's elderly parents in New Jersey in order to assist in their care. In April 2007, the decedent left the New Jersey residence and returned to the Pennsylvania residence. He encountered the home in poor condition and resided with a friend, Judith Perry, for a few months while the home was repaired.

The decedent then stayed at the Pennsylvania house and Fern Racht continued to reside with her parents in New Jersey. In August 2007, Fern Racht, through counsel, filed for divorce in Pike County, Pennsylvania. After four (4) years of no activity in the case, Fern Racht filed a notice of intention to proceed with divorce in 2011. No other action was taken and the parties remained legally married.

The parties lived separate and apart until the time of the decedent's death in April 2014. During that time, each party remained financially independent. The parties also remained friends after an initial period of acrimony. Both parties dated other people. After the death of Fern Racht's parents, she moved back to Monroe County, Pennsylvania, residing in a mobile home titled solely in her name. Fern Rach cohabitated on two separate occasions with a boyfriend named Tony and Chuck. Ms. Racht was still residing with her boyfriend Chuck when the decedent died. The decedent also lived with a girlfriend at times during the separation from Ms. Racht.

In or about 2013, the decedent entered into a refinance and/or loan modification with a lender on the residence in Jackson Township. At that time, Fern Racht signed a quit-claim deed conveying her interest in the home to the decedent. The decedent also was the only named person on the new mortgage and/or loan modification. Other than an occasional loan to each other, neither party financially supported the other party.

Orphans' Court Opinion, 7/13/16 at 2-3.

Following the decedent's death, Letters of Administration were initially granted to Racht as the surviving spouse. Janet Foster, the decedent's sister, filed an objection to the issuance of Letters of Administration to Racht. A hearing was conducted before the Register of Wills on December

- 2 -

11, 2014, after which the Letters were revoked and re-issued to Janet Foster. Racht subsequently filed an appeal to the Orphans' Court. On July 13, 2015, the Orphans' Court affirmed the decision of the Register of Wills to revoke the Letters of Administration to Racht, based upon a finding that Racht had forfeited her right to a spousal share of the decedent's estate pursuant to 20 Pa.C.S.A. § 2601(a)(1).[1] This timely appeal followed.

Racht raises the following issue for our review.

Was the [Orphans'] [C]ourt's decision, upholding a prior determination of the Register of Wills revoking letters of administration previously granted to Appellant Fern Racht and declaring that Mrs. Racht had forfeited her spousal share of her deceased husband's estate, free from legal error and supported by competent and adequate evidence in the record?

Appellant's Brief at 4.

Our standard when reviewing an Orphans' Court's findings is deferential.

The findings of a judge of the orphans' court division, sitting without a jury, must be accorded the same weight and effect as the verdict of a jury, and will not be reversed by an appellate court in the absence of an abuse of discretion or a lack of evidentiary support. This rule is particularly applicable to findings of fact which are predicated upon the credibility of the witnesses, whom the judge has had the opportunity to hear and observe, and upon the weight given to their testimony. In reviewing the Orphans' Court's findings, our task is to ensure that the record is free from legal error and to determine if the Orphans' Court's findings are supported by competent and adequate evidence and

---

[1] The Orphans' Court relied upon the record of the hearing conducted before the Register of Wills as well as argument briefs prepared by the parties.

are not predicated upon capricious disbelief of competent and credible evidence.

When the [Orphans'] Court has come to a conclusion through the exercise of its discretion, the party complaining on appeal has a heavy burden. It is not sufficient to persuade the appellate court that it might have reached a different conclusion if, in the first place, charged with the duty imposed on the court below; it is necessary to go further and show an abuse of the discretionary power. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record, discretion is abused. A conclusion or judgment constitutes an abuse of discretion if it is so lacking in support as to be clearly erroneous.... If the lack of evidentiary support is apparent, reviewing tribunals have the power to draw their own inferences and make their own deductions from facts and conclusions of law. Nevertheless, we will not lightly find reversible error and will reverse an orphans' court decree only if the orphans' court applied an incorrect rule of law or reached its decision on the basis of factual conclusions unsupported by the record.

*In re Jerome Markowitz Trust*, 71 A.3d 289, 297-298 (Pa. Super. 2013) (citation omitted).

"When the Orphans' Court arrives at a legal conclusion based on statutory interpretation, our standard of review is de novo and our scope of review is plenary." *In re Estate of Fuller*, 87 A.3d 330, 333 (Pa. Super. 2014) (citation omitted).

"The death of a spouse during the pendency of a divorce proceeding abates the divorce action and any and all claims for equitable distribution." *In re Estate of Cochran*, 738 A.2d 1029, 1031 (Pa. Super. 1999) (citation omitted). "However, the Probate, Estates and Fiduciaries Code (the "Probate Code") 'contains substantial provisions designed to insure the fair

distribution of the marital estate upon the death of one spouse.'" *Id*. (citation omitted). The relevant section of the Probate Code provides as follows.

> § 2106. **Forfeiture**
>
> **(a)   Spouses share**.—
>
> (1)   A spouse who, for one year or upwards previous to the death of the other spouse, has willfully neglected or refused to perform the duty to support the other spouse, or who for one year or upwards has willfully and maliciously deserted the other spouse, shall have no right or interest under this chapter in the real or personal estate of the other spouse.

20 Pa.C.S.A. § 2106(a)(1).

The Pennsylvania Supreme Court has recognized that

> the mere fact of separation does not create a presumption of willful and malicious desertion. *In re Estate of Kostick*, 514 Pa. 591, 594, 526 A.2d 746,748 (1987). *See also Lodge's Estate*, 287 Pa. 184, 186, 134 A. 472, 473 (1926) ("Mere separation is not desertion, there must be an actual abandonment of matrimonial cohabitation with intent to desert, willful and persisted in without cause."). Thus, where an allegation of desertion is based on separation, the party advocating forfeiture must prove there was a desertion without cause or consent of the other spouse. *In re Estate of Fisher*, 442 Pa. 421, 424, 276 A.2d 516, 519 (1971). However, once such a showing has been made, the parties' separation is presumed a willful and malicious desertion and the burden shifts to the surviving spouse to prove the contrary. *Id.*

*Estate of Cochran*, 738 A.2d at 1031 (internal quotes omitted).

Racht contends on appeal that any failure on her part to "perform the duty to support" the decedent "was the result not of refusal or willful neglect

on her part but rather the refusal to accept her spousal services[.]" Appellant's Brief at 9. Racht's argument is unavailing.

A panel of this Court (and which was authored by this writer) recently decided a factually similar case in *In re Estate of Talerico*, --- A.3d ---, 2016 WL 1077968 (Pa. Super., filed March 18, 2016). In *Talerico*, Husband moved out of the marital residence due to marital difficulties. *See id*. at *1. Wife thereafter initiated divorce proceedings, and the parties continued to live separately and eventually both Husband and Wife engaged in extramarital relationships. *See id*. Wife subsequently died prior to the finalization of the divorce proceedings. *See id*. When Husband sought and was granted Letters of Administration to Wife's estate, Wife's sister filed a notice of claim against Wife's estate, maintaining Husband had forfeited his claim as surviving spouse pursuant to 20 Pa.C.S.A. § 2106(a)(1) because of his post-separation conduct. *See id*. at *2. The trial court agreed.

On appeal, the panel affirmed the Orphans' Court's finding that Husband had forfeited his right to a spousal share of decedent's estate. Specifically, we determined that Husband's extramarital affairs following the parties' consensual separation "gave rise to an inference of willful and malicious desertion that Husband has failed to rebut" such that the forfeiture provision of Section 2106(a)(1) of the Probate Code applied. *Id*. at *4 (citing *In re Crater's Estate*, 93 A.2d 475, 478 (Pa. 1953) ("[W]here a separation has its inception in mutual consent of the parties, it becomes a wil[l]ful and malicious desertion on the part of the spouse who thereafter is

guilty of conduct violative of the marriage vows." (citations omitted))). We further found Husband's argument that Wife had first engaged in extramarital affairs to be irrelevant to our analysis. *See id*. (citing *In re Archer's Estate*, 70 A.2d 857, 860 (Pa. 1950) ("[W]here there had been a separation by mutual consent and thereafter both spouses enter into adulterous relationships with paramours, *neither spouse may share in the other's estate, irrespective of who was the first to transgress*.") (emphasis added)).

We find the reasoning espoused in *Talerico* applies equally to the instant case. It is undisputed that Racht and the decedent separated in April 2007. Thereafter, the parties maintained separate residences and remained financially independent. Racht commenced divorce proceedings later that year in August 2007 and following a period of inactivity again sought reinstatement of the proceedings in 2011. During that time, both Racht and the decedent engaged in extramarital affairs. Thus, irrespective of which party first engaged in an extramarital relationship, our case law is clear that Racht's extramarital relationships following her separation from the decedent but prior to the finalization of divorce gives rise to a willful and malicious desertion under Section 2106(a)(1) of the Probate Code. *See In re Archer's Estate*, *supra*; *In re Crater's Estate*, *supra*.

We are unpersuaded by Racht's claim that her separation from the decedent was not consensual. Although Racht maintains that the decedent barred her from the marital residence upon his return from New Jersey, she

admits that she never returned to live at the marital residence and there is no evidence that Racht made any serious or continued attempts at reconciliation. Moreover, even if Racht had initially wished to engage in reconciliatory attempts, this Court has astutely recognized that "the essence of a separation can be transformed, so that a separation, non-consensual at the outset, can become a separation which is consensual on the part of both spouses[.]" *Estate of Fulton*, 619 A.2d 280, 285 (Pa. Super. 1993). As noted, Racht filed for divorce several months after separation, maintained her own residence and financial independence upon her return to Jackson Township, and engaged in several extramarital relationships. Racht's conduct later in the relationship at the very least evidences a tacit consent to the separation.

Based on the foregoing, and in light of our deferential standard of review, we can find no abuse of discretion in the Orphans' Court's determination that Racht had forfeited her spousal share in the decedent's estate pursuant to 20 Pa.C.S.A. 2601(a)(1). Accordingly, we affirm the court's order sustaining the decision of the Register of Wills to revoke the Letters of Administration to Racht, and to re-issue the Letters of Administration to decedent's sister.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/17/2016